## WILLIAM F. WEBER *vs.* JEREMIAH WEATHERBY, and others.

### *Mechanics' Lien—Estoppel.*

The owner of a house in course of erection, contracted to sell it to R, and to have it completed like one adjoining. R deposited a sum of money as a forfeit, upon his non-compliance with the contract. Pending the contract, R purchased of W a range, furnace and other articles, which were delivered upon the premises with the knowledge of the owner, the furnace and range being bricked up in the cellar. Subsequently, R abandoned the contract, and refused to take the house; the owner retained the forfeit money, and with it, the house and fixtures in question. On a *scire facias* by W to enforce a mechanics' lien against the house, for the articles furnished by him, it was HELD :

1st. That the articles must be considered as furnished under the authority of the owner of the house, and he is estopped by his own conduct from disputing the demand.

2d. That the adoption by the owner of the acts of R, permitting the articles to be attached to the house, without objection, makes the house answerable for the same, and creates a lien on the property for its payment.

APPEAL from the Superior Court of Baltimore City.

This was a proceeding by *scire facias,* instituted by the appellees, to enforce a mechanic's lien for a furnace, range and hot-air fixtures, &c., furnished by them, and used in the construction of a house in the city of Baltimore, of which the appellant was the owner. While the house was being built, on the 9th of October, 1868, the appellant agreed to sell the same to Charles Ranstead upon the terms mentioned in the agreement. The house was to be finished like one adjoining. Ranstead deposited a hundred dollars as forfeit, in case of non-compliance with the agreement. After the making of the agreement, Ranstead purchased of the appellees the range, furnace and other articles for which the lien was claimed, and they were delivered upon the premises with the knowledge of the appellant, the furnace and range being bricked up in the

cellar. Subsequently, Ranstead abandoned the contract, and refused to take the house, and the appellant retained the hundred dollars forfeit, and with it the house and fixtures in question.

*Exception:* The plaintiffs offered the following prayer, which was granted by the Court:

If the jury find the contract offered in evidence, dated the 9th of October, 1868, between Ranstead and Weber and Hubner, for the sale to the former by the latter of the premises mentioned in the lien and *scire facias* among the proceedings, and shall further find that the plaintiffs furnished and delivered to the said house the articles, and performed the work mentioned in said lien and evidence, at the instance of said Ranstead, and that the said articles were by said plaintiffs so erected and built in said premises, and the work done as aforesaid was so done in said building and erection in said premises of said articles, then their verdict ought to be for the plaintiffs for the whole value of said articles and labor, provided the jury further find that the said lien offered in evidence was laid or filed by the said plaintiffs against said house, within six months after such work had been finished, and said articles and materials had been furnished, and that notice in writing was given to said Weber of the intention of said plaintiffs to claim the benefit of the lien upon said premises, according to the provisions of the Mechanics' Lien Laws, within sixty days after the performance of such work and furnishing such materials or articles as aforesaid, as admitted by the defendants.

The defendant excepted to the granting of this prayer. A verdict was rendered for the plaintiffs against the property for $520.41, and judgment was entered accordingly. The defendant appealed.

The cause was agued before BARTOL, C. J., STEWART, GRASON, MILLER ALVEY and ROBINSON, J.

*Richard Hamilton* and *Orville Horwitz,* for the appellant.

Ranstead was not the *contractor, architect, builder, or other person* contemplated by Article 61, section 11 of the Code of Public General Laws. *Code, Art.* 61, *sec.* 13; *Duff vs. Hoffman,* 13 *P. F. Smith,* 194; *Greenway vs. Turner,* 4 *Md.,* 304; *Bruner vs. Shiek,* 9 *Watts & Searg.,* 119.

. The lien, if it attached at all, attached only to Ranstead's interest in the building as owner. *Code, Art.* 61, *sec.* 9; *Church vs. Griffith,* 9 *Penn.,* 118; *Esterley's Appeal,* 54 *Penn.,* 193; *Mills vs. Matthews,* 7 *Md.,* 324.

Ranstead, as owner, had no power to bind the building. *Brown vs. Morrison,* 5 *Arkansas R.,* 217; *Mills vs. Matthews,* 7 *Md.,* 315; *Carson's Lessee vs. Boudinot,* 2 *Wash. C. C. R.,* 33; *Steinmetz's Ex. vs. Boudinot,* 3 *S. & R.,* 541, 542; *Carey vs. Winterstein,* 60 *Penn. S. Rep.,* 397.

The plaintiffs were bound to see that they were dealing with the person who was *actually* the builder or contractor, at the time the materials were furnished. *Greenway vs. Turner,* 4 *Md.,* 304.

The prayer was erroneous for that it *compelled* the jury to find a fact, viz: their verdict ought to be for the plaintiffs " for the whole value of said articles and labor," without leaving the jury the right to doubt the evidence of Ranstead as to price or value. *Crawford vs. Berry,* 6 *Gill & Johns.,* 71, 72; *Stiles vs. Causten,* 2 *Gill & Johns.,* 53; *Mitchell vs. Doll,* 4 *Gill & Johns.,* 376; *Davis vs. Barney,* 2 *Gill & Johns.,* 404; *Burt vs. Gwynn,* 4 *Harris & Johns.,* 516.

*T. A. Linthicum,* for the appellees.

The agreement of October 9th, 1868, for the sale of the property to Ranstead, was sufficient to give him the authority to order work or materials to be done or furnished for or about the building, which, when done or furnished, would subject the building to a lien. The materials, when furnished or delivered at the building, belonged to the owner of the building, which was subject to a lien therefor. No personal

right of property was acquired by Ranstead by such purchase —and no creditor of Ranstead could take the materials in execution on judgment against him.    *White vs. Miller*, 18 *Penn. S. R.*, 52 ; *Savoy vs. Jones*, 2 *Rawle*, 350 ; *Carson vs. Boudinot*, 2 *Wash. C. C. R.*, 34 ; *Lyon vs. McGuffey*, 4 *Barr*, 126 ; *Woodward vs. Leiby*, 36 *Penn. S. R.*, 437 ; *Leiby vs. Wilson*, 40 *Penn. S. R.*, 63 ; *Donaldson vs. Holmes*, 23 *Ill.*, 85 ; *Phillips vs. Clark*, 4 *Met.*, (*Ky.*,) 348 ; *Code, Art.* 61, *secs.* 1–11 ; *American Fire Ins. Co. vs. Pringle*, 2 *S. & R.*, 138 ; *Pennock vs. Hoover*, 5 *Rawle*, 306.

The proceeding is against the property—and under the first section the lien is general against *every building*—and the only exception, in respect of interest, is that expressed in section 9, *i. e.*, with respect to the interest of a lessee or tenant for years or life ; and *Mills vs. Matthews*, 7 *Md.*, 315, is to this extent.

There is nothing in the law which restrains the claimant's right to a judgment for the value of his claim, or his right to have the property sold under execution on his judgment. The question of rights of parties incumbrancers, or persons having liens, arise after a sale upon the distribution of the fund.    *Wells & Miller vs. Canton Co.*, 3 *Md.*, 234.

STEWART, J., delivered the opinion of the Court.

This appeal involves the interpretation of the 61st Article of the Code, in reference to the mechanics' lien.    No question is made, as to the form or regularity of the proceedings, under the law, but the claim for the articles furnished by the appellees, although used in the house of the appellant, is resisted by him, upon the ground, that the articles were not furnished by his authority, and that the provisions of the law afford no lien on his property for the same.

There is no doubt, the claim of the appellee must come within the scope of the law, or the lien cannot be maintained. Whilst the house of the appellant was in the course of erection by him, he contracted to sell it to Ranstead.    By the terms of the contract, the appellant was to finish the house,

like the one adjoining; certain payments were to be made by Ranstead, and other stipulations were incorporated in the contract; the sum of $100 was deposited by Ranstead, as a forfeit, provided in case of non-compliance on his part.

This contract was subsequently abandoned by Ranstead, because of the alleged inability of Weber to finish the house by the time agreed upon, and he refused to take the house. Weber seemed to have acquiesced in the abandonment of the contract, retained the $100 forfeit, and with it the house and the fixtures in question, which had been ordered by Ranstead, and furnished and delivered by the appellees on the premises, and put up in the house during the pendency of the contract.

The agreement between the parties for the sale of the house, appears to have been mutually waived, and no question is presented in regard thereto, except as it may relate to the creation and imposition of the lien for the materials furnished, whilst the contract was in force. According to the evidence, the furnace for the house adjoining cost $360, whilst the charge for the one ordered by Ranstead, was $470. As the house, agreed to be sold, was unfinished and had to be completed by Weber, according to the contract, like the one adjoining, including of course such a furnace as was contained in that; if precisely the same sort of furnace had been directed by Ranstead, and had been put up in the house in the possession of Weber, with his knowledge and without objection, it would be a reasonable inference that it was done with his sanction and approval, and by his authority. Under such circumstances there could be no question of his liability, according to the contract, to pay for the same, and that it would fasten a lien on the house to which the fixture was attached, according to a fair construction of the provisions of the law. This would be done, by treating Ranstead as the agent, in this particular, of Weber, the owner of the property.

In our opinion, the fact of the extra cost of the furnace, ordered by Ranstead, and put up in the house, under the circumstances, does not alter the relations of the parties, or modify the law applicable thereto. In either case, Weber

and his house are responsible; the former, according to the principles of natural justice, and the latter, under the provisions of the statute, for the act of Ranstead. The materials must be considered as furnished under his authority, and he is estopped by his own conduct from disputing the demand. To allow him to repudiate the transaction, would be enabling him by reason of the contract with Ranstead, to perpetrate a fraud upon the mechanic or person, furnishing materials for his house, and to appropriate the property of others to his benefit.

The provisions of the law applied to the transaction, give the lien, and make the property upon which the building is erected, answerable for work done or materials contracted for and furnished, accordingly, by the authority of the owner or his agent. Weber owning the house, to be constructed and finished by him, permits Ranstead, after the contract with him and during its pendency, to intervene and assist in the construction of the building, to this extent at least, by accepting his agency and recognizing his acts, by interposing no objection thereto; Weber's adoption of Ranstead's acts, permitting the fixtures to be attached, without notice of objection, makes the house answerable for the same, and creates the lien on the property for its payment.

Objection is taken by the appellant in his brief to the language of the prayer, granted by the Court below, as invasive of the province of the jury, in directing them to find for the appellee, for the entire amount of his claim. There was no dispute as to this and no conflict of testimony, and the jury were substantially instructed upon the other hypothetical facts, referred to in the prayer, to find for the appellee, and the terms employed were immaterial under the circumstances of the case.

We have carefully examined all the authorities referred to and within our reach, and we think the law applied to the facts, justified the instruction of the Court.

*Judgment affirmed.*

(Decided 23d June, 1871.)