(Decided 12th March, 1885.)

## WILLIAM H. RIMMEY *vs.* MARY C. GETTERMAN, and others.

*Husband and Wife—Husband as Agent of Wife—Mechanics' lien—Notice.*

A married woman, whose husband was without means, purchased a farm for him to work. It needed houses, and she agreed to furnish the money to build them. The contract with the builder was made by the husband. The wife told the contractor, before he began the work, to go ahead with it; she superintended and directed the work, and promised to pay for it. When the contractor's credit failed to secure the necessary lumber, she agreed to pay the lumber dealers their money, and forthwith the material came. During the progress of the work she made sundry payments on account of it. In an interview with the attorney who was employed by the contractor to collect the balance due him, she begged that he would not proceed against the buildings, and promised to pay the contractor what she owed him. She objected to the amount claimed, but made no other objection to paying the bill. She stated that she would mortgage her property and pay all the claims for erecting the buildings. The contractor filed his bill in equity alleging that there remained due to him on account of the work done upon, and materials furnished for, the buildings, a certain balance, and he claimed to have a mechanics' lien therefor, and prayed for a sale of the property to pay such lien. HELD:

1st. That the proof showed that the husband acted as the agent of the wife, and she must be held not only to have authorized the

work to be done for her through him, but afterwards to have fully ratified and adopted the contract.

2nd. That as the husband acted as the agent of his wife in making the contract, no notice to her of an intent to claim a lien was necessary, and the omission of such notice was no defence to the lien.

3rd. That the complainant was entitled to have the property sold for the enforcement of his lien.

APPEAL from the Circuit Court for Baltimore County, in Equity.

This is an appeal taken from an order dismissing the bill of complaint, with costs to the defendants. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, RITCHIE, and BRYAN, J.

*William S. Bryan, Jr.,* and *John T. Ensor,* for the appellant.

*Benjamin Kurtz,* for the appellees.

In order to charge the general debts or personal engagements of a married woman upon her separate estate as a lien in equity, it is necessary that it should affirmatively appear that her contract was made with direct reference to her separate estate, and that it was her intention to charge the same. The intention to charge must be *part of the contract,* and it must be shown that she contracted for the direct purpose of charging her separate estate. It is not sufficient to show that the contract was entered into by the creditor upon her personal credit, and was for work done and materials furnished for the improvement of her separate estate, whereby the same was enhanced in value. *Wilson & Hunting vs. Jones,* 46 *Md.,* 349; *Koontz vs. Nabb,* 16 *Md.,* 549; *Conn vs. Conn,* 1 *Md. Ch. Dec.,* 217; *Hall vs. Eccleston,* 37 *Md.,* 521; *Cooke*

*vs. Husbands,* 11 *Md.,* 492 ; 2 *Story's Eq. Juris.,* secs. 1398 *and* 1401.

The fact that the wife furnished the husband money to complete the improvements which he had commenced on his own account, but was unable to finish without her assistance, is convincing evidence that she did not intend that the non-payment for the improvements should entitle the appellant to a charge or lien upon her property.

The appellant, in order to subject the wife's separate estate, in equity, with payment for improvements put upon it, upon the ground that her husband contracted with him for this purpose, as the agent of the wife, must show by clear proof that the wife not only authorized or ratified the contract, but that she gave the husband the further authority *to charge said payment upon her separate estate;* and that as a matter of fact, the husband, in his contract, as said agent, with the appellant, did charge said payment upon his wife's separate estate.

In order to establish an implied agency on the part of the husband to act for the wife, from the fact that he is in the *possession and use* of her property, the proof must be clear and satisfactory, for the reason that his relation as husband entitles him to the occupation of her property. And where the wife's subsequent ratification of the husband's act is relied upon in proof of the agency, the evidence must be of a stronger and more satisfactory character than would be sufficient to establish a ratification between other persons, because the wife is presumed to be under the influence of the husband. *Bishop on Married Women,* sec. 396 ; *Rowell vs. Klein,* 44 *Ind.,* 291, 293 ; *McLaren vs. Hall,* 26 *Iowa,* 297–305.

The knowledge on the part of a married woman, that improvements are being placed upon her property by her husband, and that she did not object to the same, and made suggestions while the work was in progress, as to the character and dimensions of the buildings, are not suf-

ficient circumstances *in themselves* to show that she ratified the contract made by her husband for this purpose. *Mc-Laren vs. Hall*, 26 *Iowa*, 297 *; Abbott's Trial Ev., p.* 358.

· The power of the wife, or of her husband acting as her agent, to charge her separate estate, in equity, with the payment of her debts, is limited to *executed acts*, and does not extend to *executory contracts. Stewart & Carey on Husband and Wife*, 112, *note* 1; *Light vs. Lane*, 41 *Ind.*, 542; *Stevens vs. Parish*, 29 *Ind.*, 260.

The absence of any allegation in the original bill, that the wife intended to charge her separate estate with the payment of the appellant's claim, and the entire failure of the proof to support the allegation, entitles the Court to the conclusion that this allegation was inserted in the amended bill, simply to overcome the grounds of the demurrer, (sustained by the Court below,) interposed by the appellees to the original bill, and to afford him a standing in Court.

The letter claimed to have been written by the appellant's counsel to Mary C. Getterman and her husband, to the effect that he would sell her property if the appellant's claim was not paid, was an insufficient notice of the intention of the appellant to claim a lien against the buildings, &c., under the provisions of the mechanics' lien law. *Revised Code, Art.* 67, *sec.* 10, *&c.;* 2 *Poe's Pl. & Pr.*, *secs.* 738 *and* 747 ; *Hess vs. Poultney*, 10 *Md.*, 267, 268 ; *Thomas vs. Barber*, 10 *Md.*, 390 ; *Trustees, &c. vs. Heise*, 44 *Md.*, 473.

There is no evidence in the case that the contract alleged to have been made by the wife, or her husband, as her agent, with the appellant *was in writing.* This is essential to entitle the appellant to a mechanics' lien, based upon a contract with a married woman. This point was not raised or decided in the case of *Jarden and Wife vs. Pumphrey*, 36 *Md.*, 364 ; *Six vs. Shaner and Wife, et al.*, 26 *Md.*, 444; *Sturmfelsz vs. Frickey and Wife*, 43 *Md.*, 569 ; *Philips on Mechanics' Liens, secs.* 95, 108, 112, 113.

IRVING, J. delivered the opinion of the Court.

The original bill in this cause, charges, that the appellee, Mary C. Getterman, wife of Lewis Getterman, is the owner of certain land in Baltimore County, and that at her request, and by her employment, the appellant built on her land certain houses, and that there remained due to the complainant on account of his work upon, and materials furnished for, the said houses, the sum of five hundred and ninety-nine dollars and thirty-one cents, for which he had a mechanics' lien, and prayed for a sale of the property to pay the lien. The amended bill filed by leave of the Court adds to the charges of the original bill, the allegation that Mrs. Getterman, at the time of making the agreement to build, agreed with the complainant to charge her separate estate with the payment of the cost thereof. The prayer of the amended bill is for a sale of the property to pay the lien, as asked in the original bill, and for such other and further relief as the complainant's case required.

The answer of Getterman and wife admits the wife's ownership, but denies that Mrs. Getterman agreed to charge, or intended to charge, her separate estate for the buildings. They admit that the appellant built the houses charged for in the months of June, July, September and October, of 1882, but they deny that the work was done at the request of Mrs. Getterman. They aver that it was done at the request of, and in pursuance of a contract with, Lewis Getterman, the husband. The answer charges that no notice was served on Mrs. Getterman, or her husband, within sixty days after finishing the work or furnishing the materials, either in writing or by parol, of complainant's intention to claim a lien. It denies that the amount claimed, or any amount, is due from either of the respondents. It denies that they accepted the buildings, and charges that the work was unskilfully done.

The answer avers "the actual transaction in the matter of the erection of the buildings" to have been as follows, viz., "the said Mary C. Getterman purchased the said land with her own means, in order to enable her husband to carry on farming, and it being necessary to make the improvements on the land mentioned in the bill of complaint, she agreed also to furnish the money to her husband for this purpose. The contract for the labor was made with the complainant by Lewis Getterman alone; the only materials furnished by the complainant for the buildings were some nails; the other materials were furnished from other sources."

In the admissions of Mr. and Mrs. Getterman in this paragraph of the answer, which answer is sworn to by both Mr. and Mrs. Getterman, we find the key to the proper decision of this case. Many other circumstances given in evidence become very important and convincing, when taken in conjunction with the admissions we have quoted. Mr. Getterman had no money or property. The wife had. She bought the farm for him to work. She so testifies in addition to the admission of the answer. It needed houses, and she agreed to furnish the money to pay for building them. She could not, in the start, agree to pay for them without thereby agreeing to build them. They would greatly enhance the value of her farm, and be hers, and she could not have expected her husband, without means, to have them built on his credit, and that she was to escape liability for their cost. By agreeing they should be built, and that she would furnish the money to pay for them, we must hold that she made her husband her agent to have it done. In confirmation of this, we have the testimony of the appellant, the contractor, who testifies that before he commenced work Mrs. Getterman told him to go ahead with the work. She admits that she was present at the measurement for the barn, when that measurement was made, preparatory to

beginning the work; and though there is some conflict of statement between Mrs. Getterman and the contractor as to whether she assisted in its measurement by holding one end of the tape-line, the fact of her presence cannot be questioned.

The contractor says *she* promised to pay him, and she admits that she did. Mr. Jones, a workman, who assisted in building the addition to the house, testifies that she exercised ownership, and gave directions about the building, and that she told Mr. Rimmey, in his presence, to do the work as *she* wanted it done, in her way, that she would pay for it. She caused the whole plan of the brick-building to be changed, and had it built of frame instead of stone, thus increasing the cost as much as two hundred dollars. By this change of plan the contract to pay a gross sum for all the work ordered to be done, was set aside, and the builder was left to claim compensation according to the *quantum meruit* rule.

When Rimmey's credit failed to secure the necessary lumber she came forward and agreed to pay the lumber dealers their money, and forthwith the material came. About this there is no controversy, she admits it. During the progress of the work she made sundry payments on account of it. This she also admits. Rimmey swears he knew Mr. Getterman had no means, and that he was confiding wholly in her to pay. The admitted fact that the husband was without means tends strongly to sustain Rimmey in his statement, that he was relying wholly on the wife, and considered himself as contracting with her. Her whole conduct, promises, and payments justified him in supposing he was dealing with her, and in feeling secure. The letter which he wrote Mrs. Getterman, informing her of the negotiation with the husband, and what he had agreed to have done, and at what price, and proposing to do more for a specified sum, clearly indicates that he regarded her as the responsible person; and he

thereby gave her an opportunity to repudiate, if she was not disposed to have the work done, which she did not do.

Both Mr. Rimmey and Mr. Getterman agree in their testimony, that when the back building was agreed to be put up the first agreement about the barn was merged in the new contract, which both say was to be twelve hundred dollars for all the buildings and work. As we have already said the change of plan for the back building subsequently set this contract in gross aside, and remitted Rimmey to his claim on a *quantum meruit.* In addition to all this we have Mr. Ensor's account of what Mrs. Getterman said to him when she came to see him, after he wrote to her that he had the claim to collect, and unless it was paid he would lay a lien and proceed against the buildings. He testifies that she was much troubled, and begged that he would not proceed against the buildings, and said "that she would pay Mr. Rimmey what she owed him." She did not contend that *her husband* was liable, and *she was not.* She speaks of what *she* owed, and not what *he owed.* She only objected to the amonnt claimed, and made no other objection to paying the bill. She said all she wanted to know "was how much *she* owed Mr. Rimmey;" that she would mortgage her property and pay all the claims for erecting the buildings. In all this interview she recognized the debt as *hers,* and that she must arrange for its payment. Taking all these circumstances, admissions and statements into consideration, we think there is no escape from the conclusion, that Getterman acted as his wife's agent, and that the contract must be regarded as made for her. If the authority was not express it was necessarily implied from what was said and done by her. As the husband acted in making these contracts, as the wife's agent, no notice to the wife, such as is contended for by the appellees' counsel, was necessary, and the omission of such notice is no defence to the lien. Section 10 of Art. 61 only requires notice to be given the

wife of the claim, and intent to claim a lien for it, when the husband does the work *jure mariti.* If he does it by her authority he acts as her agent, and the section cited does not apply. *Jarden and Wife vs. Pumphrey*, 36 *Md.*, 361. The object of the provision is notification. Being done for her, she needed no notice. She not only knew of it, but superintended and directed the work, and in person promised to pay for it. Upon the proof we think she must be held not only to have authorized the work to be done for her through her husband, but that she afterwards fully ratified and adopted the contract.

The contention of the appellees that the work was imperfectly done, and that in consequence thereof the claim made is wrong and inequitable, is not supported by the evidence. The decided weight of evidence, in that regard, is in favor of the appellant. It is admitted that the lien was filed in time to be valid; if the notice had been given of an intention to claim it. Finding, as we do, that it is a case in which notice was not required to be given, it follows that there was error in the dismissal of the bill by the Circuit Court. Taking this view it is not necessary to consider whether Mrs. Getterman specially agreed to charge her separate property.

The decree will be reversed, and the cause will be remanded to the end, that a proper decree may be passed enforcing the mechanics' lien, by a sale of the property.

*Decree reversed, and*
*cause remanded.*

(Decided 12th March, 1885.)