## ADKINS & DOUGLAS COMPANY *v.* GEORGE C. WEBB ET AL.

[No. 6, January Term, 1931.]

*Decided April 8th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Wilbert L. Merriken* and *Leonard Wailes,* with whom were *Merriken & Merriken* and *Wailes & Robins,* on the brief, for the appellant.

*W. Brewster Deen* and *J. Owen Knotts,* for the appellees.

DIGGES, J., delivered the opinion of the Court.

This is a mechanic's lien case. The appellant furnished certain materials used in the construction of a house built upon a lot of ground located in the town of Preston, Caroline County, Md., which land was the fee simple property of the defendant Mary R. Webb. The materials were furnished between March 18th, 1921, and September 8th of the same year. The total amount due for the materials furnished was $2,062.82, of which $1,250 was paid, leaving a balance due and unpaid of $812.82. On February 17th, 1922, the appellant filed and recorded a mechanic's lien in the Circuit Court for Caroline County for that amount, for materials furnished George C. Webb and Mary R. Webb, the owners or reputed owners of the house, within six months last past. There was no notice of an intention to file a lien given, either verbally or in writing, to Dr. Webb or Mrs. Webb. The bill in this case was filed January 22nd, 1927, for the purpose of enforcing the payment of the lien. Separate answers to the bill were filed by Dr. and Mrs. Webb, duly sworn to, in which it was alleged that neither of the parties had received any notice of the intention of the appellant to file a lien, and further alleged that Mrs. Webb "never made a contract, directly or indirectly, in person nor by agent, for the furnishing of any part of the material set forth in the plaintiff's bill of complaint, nor in the purported lien thereto attached." The language quoted is taken from the answer of Mrs. Webb, while the husband's answer alleges that "to his knowledge the said Mary R. Webb therein mentioned had nothing to do with said contract or the erection of the building therein mentioned." Both answers admit the ownership by the wife of the land upon which the building was erected. Testimony was taken before an examiner, and upon a hearing the chan-

cellor passed a decree dismissing the bill. It is from this decree the appeal is prosecuted.

The ultimate question presented by the appeal is: Was Dr. Webb the agent of his wife, Mary R. Webb, the owner of the land upon which the building was erected and in the construction of which the materials furnished were used. There is no dispute that she owned the land, nor that her husband actually ordered the materials in question, either in person or through a carpenter who had charge of the construction of the building. It is also undisputed that the appellant's books of account showed that the cost of the materials was charged to Dr. Webb alone. We have, then, a case of an alleged mechanic's lien for materials furnished for the construction of a building on the land of a married woman, which was ordered personally by the husband; no notice having been given by the materialman to either the husband or wife of intention to claim a lien.

Mechanic's liens are purely creatures of statute; and, in order to obtain a lien, the mode prescribed by statute must be substantially complied with. As was said in *Sodini v. Winter,* 32 Md. 133: "This peculiar lien does not originate in contract; it is purely a creature of positive statutory enactment, to be maintained and enforced to the extent and in the mode which the statute prescribes." Section 10, article 63 of the Code, provides: "Where a building shall be erected on a lot of ground belonging to a married woman by her husband or some person by him employed the said lien shall not attach unless notice thereof be given to such married woman in writing within sixty days after doing such work or furnishing such materials, or both, as the case may be." Section 11 of the same article provides: "If the contract for furnishing such work or materials, or both, shall have been made with any architect or builder or any other person except the owner of the lot on which the building may be erected, or his agent, the person so doing work or furnishing materials, or both, shall not be entitled to a lien unless, within sixty days after furnishing the same, he or his agent shall give notice in

writing to such owner or agent, if resident within the city or county, of his intention to claim such lien."

These sections have been before this court for construction on a number of occasions: and as a result of these decisions, it seems now to be firmly settled in this state that, in order to obtain a mechanic's lien against property belonging to a married women, where the contract for the building has been made by her husband, it is necessary that the parties seeking the lien notify such married woman in writing within sixty days from the last date upon which materials were furnished or work done, except in cases where it is shown that the husband acted as the agent for the wife. *Conway v. Crook,* 66 Md. 292, 7 A. 402; *Rimmey v. Getterman,* 63 Md. 431; *Jarden v. Pumphrey,* 36 Md. 363; *Frazee v. Frazee,* 79 Md. 30, 28 A. 1105; *Fulton v. Parlett,* 104 Md. 67, 64 A. 58.

In cases where the agency is established, no notice is necessary, because under the provisions of section 11, if the contract for doing the work or furnishing the materials is made directly with the owner or his agent, no notice is required, for the reason that the owner has knowledge of the materials furnished or work done, which has not been paid for; and in like manner, if the owner's agent has such knowledge, it is equivalent to knowledge of the owner. *Richardson v. Saltz,* 127 Md. 383, 96 A. 524, 525; *Jarden v. Pumphrey, supra; Weber v. Weatherby,* 34 Md. 656; *Real Estate Co. v. Phillips,* 90 Md. 524, 45 A. 174, 175; *Shryock v. Hensel,* 95 Md. 624, 53 A. 412. See also *Blake v. Pitcher,* 46 Md. 453; *Wilhelm v. Roe,* 158 Md. 615, 149 A. 438.

The contention of the appellees is that, even if it be conceded that the husband is the agent of the wife in this case, nevertheless the statute requires notice of intention to claim a lien to be served either on the agent or on the principal; and, from the opinion of the chancellor, it is apparent that this view was accepted by him, because, without deciding that the husband was or was not the agent of the wife, the basis of his decree is this statement in his opinion: "The complainant gave no notice under either section referred to, and as such notice is essential to the creation of a mechanic's

lien, the claim of a lien in this case cannot be enforced and the bill will have to be dismissed."

We think this view is erroneous, for the reason that, when it is once established that the husband is the agent of the wife, the provisions of section 10 are removed from further consideration, and the question then is whether under the provisions of section 11 any notice at all is required. We do not think it is. The plain and unambiguous language of this section is that the notice necessary to create a lien is only required in cases where the contract for the work or materials is with some person other than the owner or the owner's agent. In other words, paraphrasing this section, it means that, if the contract for the work or furnishing the materials is with the owner or the owner's agent, then no notice is necessary. This construction is irresistible, because if the contract is made with the owner or his agent, the purpose sought to be accomplished by requiring notice ceases to exist, and necessarily it follows that no notice is required. The underlying purpose of the requirement of notice is to acquaint an owner who has had no contractual relation, either directly or through his agent, with the party furnishing the material or doing the work, with the fact that the materials or work have not been paid for, and that therefore the owner's property will be subjected to a lien, the enforcement of which will satisfy the lien claimants.

In *Real Estate Co. v. Phillips, supra*, in which the main point to be determined was the propriety of an amendment to the proceedings, the court said: "It is conceded that no notice was given, and it is clear that, if the amendment which was allowed by the court is effective, no such notice was necessary, for the evident reason that, if Johns and Lechler were both builders and owners, this would not be a case within section 11 of article 63, requiring such notice to be given."

As we have stated, it is apparent that the chancellor passed the decree dismissing the bill of complaint because in his judgment notice to the wife of intention to claim the lien was required. In this he was in error. But it does not follow

that the decree should be reversed for that error, if upon examination the record does not disclose that the husband was the agent of the wife. The burden of showing such agency is upon the appellant, and in our judgment the record does not show that it has met this burden.

It is firmly established that the existence of the relationship of husband and wife, standing alone, is not sufficient to create agency on the part of the husband in respect to the wife's property. 20 *Amer. & Eng. Encyc.* 327; *Abrams v. Eckenrode,* 136 Md. 244, 110 A. 468; *Hartman v. Thompson,* 104 Md. 408, 65 A. 117; 13 *R. C. L.* 1168. And knowledge by the wife of the husband's intention to construct a building on her land, together with her failure to interpose objection, are not sufficient circumstances to constitute agency. *Kvedera v. Mondravitzky,* 145 Md. 260, 125 A. 591, 593; 13 *R. C. L.* 1172.

In the *Kvedera* case, Judge Pattison, speaking for this court, after quoting from 13 *R. C. L.* 1125, 1172, said: "It will therefore be seen from the above-mentioned authority, and the cases there cited, that the wife's liability upon the contract of her husband, in such cases, depends upon the question of agency. If he acts with her authority, either expressly or impliedly conferred upon him, his acts are binding upon her; and 'she may also render his unauthorized acts as her agent binding on her by subsequent ratification which under the principles of agency is equivalent to original authority.' " That was a case of tenants by the entirety, in which the husband made the contract for improvements on the common property. Upon the failure of payment, the husband and wife were jointly sued. The evidence was to the effect that the wife made all the payments that were made for the work done and material furnished under the contract; that she took an active interest in the work as it progressed, giving instructions in connection therewith, and was present on one or more occasions when the contractor met with her husband and others to discuss different phases of the transaction; that on such occasions she expressed her-

self freely and positively as to the failures and omissions of the plaintiff in his performance of the contract, therefore showing a full knowledge of the terms of the contract; and it was admitted by her that she was familiar with the preliminary contract, which she said was read over at the time it was made and executed, prior to the execution of the formal contract, and that she knew of the latter contract when she took the papers to an attorney and showed it to him. After reciting these facts, the court said: "This evidence, we think, was legally sufficient to go to the jury, as tending to show ratification, if not authorization, of the contract made by her husband with the appellee." By the plaintiff's prayer the "jury were told that, 'if they find from the evidence that the plaintiff entered into a written contract with the defendant Martin Kvedera, whereby the plaintiff was to construct certain improvements on the property owned by Martin Kvedera and Margaret Kvedera, his wife, as tenants by the entireties; and if they further find that the plaintiff did furnish certain materials and work under the contract in the construction of said building, with the knowledge and acquiescence of said Margaret Kvedera; and if they further find that the plaintiff was ready and willing on his part to fulfill and complete the contract, but was prevented from doing so by the defendants—then the plaintiff is entitled to recover. * * *' To bind Margaret Kvedera, the wife, it was not only necessary to have shown that the defendant entered into the contract mentioned with the plaintiff, but that it, made in his name, was executed by him for both himself and wife as the owner of the property upon which the improvements were to be made, and that he was either expressly or impliedly authorized by her to make such contract for and on her behalf as her agent; or that, after the contract was made, though made at the time without her authority, it was by her subsequent conduct ratified by her as having been made by him as her agent." The prayer not requiring this to be found as to Margaret Kvedera, the judgment was reversed.

In the case of *Rimmey v. Getterman, supra,* the facts were that a married woman, whose husband was without means,

purchased a farm for him to work. It needed houses, and she agreed to furnish the money to build them. The contract with the builder was made by the husband. The wife told the contractor, before he began the work, to go ahead with it. She superintended and directed the work, and promised to pay for it. When the contractor's credit failed to secure the necessary lumber, she agreed to pay the lumber dealers their money, and forthwith the material came. During the progress of the work she made sundry payments on account of it, and, in an interview with the attorney who was employed by the contractor to collect the balance due, she begged that he would not proceed against the buildings, and promised to pay the contractor what she owed him. Under these circumstances it was held that the contract was made by the husband as agent for the wife.

In the case of *Weber v. Weatherby, supra,* agency was held to have been established. The facts were that Weber, the owner and builder, agreed to sell a house in an unfinished state to one Ranstead, and to have it completed like the one adjoining. Ranstead deposited $100 as a forfeit in case of nonfulfillment of his contract. After making the agreement, Ranstead purchased of Weatherby a range and other articles, which were delivered with the knowledge of Weber and bricked up in the cellar. Ranstead having abandoned the contract, and refusing to take the house, Weber retained the house and the fixtures. It was held that Ranstead was the agent of Weber, and that Weber and his house were liable.

In *Richardson v. Saltz, supra,* in which this court was considering a bill in equity to enforce a mechanic's lien, upon demurrer, it was conceded by the allegations of the bill that no notice of intention to claim a lien was served upon the owner as provided by section 11 of article 63. The bill alleged that the appellees were the owners of a lot of ground in Crisfield, and that they contracted with one Hobson to erect a building on the lot; that Hobson contracted with the appellants for the furnishing of all the stone to be used on the building; that the stone was consigned to Hobson under

the contract between the appellants and Hobson, the last being delivered on July 29th, 1914; that on August 29th, 1914, after a considerable quantity of the stone had been used in the building, the appellees took possession of the uncompleted building, and one of the appellees finished the building, using the remainder of the stone therein. Upon these facts the court said: "Can the builder Hobson be considered as the agent of the appellees in the purchase of the materials, and thereby render a notice unnecessary under the language of the act? The doctrine of agency has been fully recognized in *Weber v. Weatherby,* 34 Md. 656." After stating the facts in the *Weatherby* case, the court then proceeded: "While the reasoning in that case is easily followed, it is difficult to see how the builder in this case can be considered the agent of the owner. There an owner of a house yet to be completed permitted one, during the pendency of a contract of purchase, to intervene and assist in its completion, to the extent, at least, of recognizing his acts and entering no objections thereto; while in the present case the appellees had entered into an ordinary building contract with Hobson, he to furnish work and material and they to compensate him. Under the provisions of article 63 of the Code the materialmen had ample protection, and, in fact, many decisions have recited that its provisions were enacted primarily for their protection. The allegations of the bill clearly show that there was no element of agency in the dealings between the appellants and Hobson. It plainly appears that there was an absolute sale and delivery to Hobson, and we find no facts stated which would justify us in finding Hobson was acting as the agent of the appellees. The fact that they took possession of the building, including the stone already used as well as that not used, cannot change the relations of the parties, so far as the application of this statute is concerned."

It will thus be seen that the question of agency in similar cases has frequently been passed upon by this court, the decision being dependent upon the peculiar facts of each case; it being impossible to set out facts from which agency could always be established.

We find the following facts disclosed by this record: That the wife was the owner of the lot of ground upon which the materials in question were used in the construction of a dwelling house thereon, having acquired title to the property by deed dated July 14th, 1920; that at the time of the acquisition of the property there was a dwelling house and other small outbuildings located thereon. Subsequently Dr. Webb erected a building on the lot, which he used as an office. The house and office were insured against loss by fire; these policies being issued in the name of the wife. In January or February, 1921, these buildings were burned. At the time of the fire there was a mortgage of $1,000 on the property, payable to one of the original vendors. The settlement by the insurance company was made by two checks, payable to Mrs. Webb, but the record fails to disclose the total amount of the insurance. It is shown, however, that the smaller of these checks was for $500 and was the amount of the insurance on the office building which Dr. Webb had erected. Out of the proceeds of the larger check the mortgage of $1,000 then upon the property was paid. The check for $500 was indorsed in the name of Mrs. Webb, *per* her husband, and was loaned to A. W. Sisk & Sons, so as to bear interest pending the use of that sum for the building of a new dwelling house. The husband proceeded, with the knowledge of, and without objection on the part of, the wife, to the erection of a new house on the property belonging to the wife. The building was not done by contract, but the husband employed carpenters and bought the material which entered into the construction of the house in his own name; the rough framing having been acquired by the husband purchasing the timber on the stump and having it sawed, while the other material was purchased from the appellant, who charged the price thereof to the husband alone and delivered same on the lot. It appears that some of the orders for this material were given by the husband, and the balance by the carpenter in charge of the building, under the authorization to do so from the husband. When the house was practically completed, the wife, together with her husband,

secured a mortgage of $2,000 on the property; and this money was deposited in bank to the husband's credit, the wife having the privilege to draw checks upon the same account. It further appears that during the progress of the building the wife was residing about a quarter of a mile from the building site, and visited the site a number of times during the course of construction, but gave no instructions as to the plan or method of building, nor any direction as to the work. Her presence upon the premises seems to have gone no farther than taking such an interest in the work as a wife would ordinarily do in the construction of a dwelling in which she expected to reside with her husband after completion. The contract for the material was made by the husband orally, and all payments which were made for labor and material were made physically by him. His testimony, which is corroborated by his wife's, is that it was his purpose to pay for the erection of the house upon his wife's land, so that upon its completion it would amount to a gift of the cost thereof from him to her. It is true that a portion of the insurance money was used by him for this purpose, as also the $2,000 derived from the mortgage on the new house, $1,250 of which last sum was paid to the appellants. But these sums, according to the testimony of the husband, were borrowed by him from the wife, with the promise on his part to repay her; which promise of repayment was, according to his undisputed testimony, fulfilled, the money for the repayment having been received by him as his distributive share of his mother's estate, which share he testified was $4,000 or $4,500; and out of which repayment to the wife she in turn reduced her mortgage on the new house by the payment of $1,000. It is argued that this whole transaction, as claimed by the appellees, is one easy to allege and most difficult to disprove. While this is true, there is nothing inherently improbable in the purpose being as stated by the husband; and, to consummate this purpose, it was not unnatural to borrow the money from the wife by having her turn over the balance of the insurance money, and raising a portion of it by a mortgage on the new house, coupled with

the later repayment to her. We must accept as true that the husband received the amount stated from his mother's estate, because it was within the appellant's power to disprove it by record evidence; and this it did not even attempt to do.

The meritorious defense set up on the part of the appellees is that the quality of the material was inferior to that bargained for; and it must be admitted that the evidence contained in the record affords some basis for this claim. If the appellant had followed the provisions of section 10 of article 63, by notifying the wife in writing of its intention to claim a lien, it would have been in such a position as to make the building and the wife's property adjacent thereto responsible for the claim. This it failed to do, but elected to rely upon proof of the husband's agency. The burden of proof is upon the appellant to show such agency; and under such circumstances, the proof of agency should be satisfactory and convincing.

Entertaining the views herein expressed, it follows, first, that where the husband is the agent of the wife, no notice of intention to claim a lien is necessary; and, second, that when the agency of the husband is relied upon by the party seeking to establish a lien, the burden of proving such agency must be sustained by convincing evidence. The facts, as disclosed from a careful examination of this record, together with the legitimate and proper inferences to be drawn therefrom, do not, in our opinion, establish the agency of the husband, either by precedent authorization or subsequent ratification by the wife.

*Decree affirmed, with costs.*