# JAMES H. FRY et al. *vs.* HENRY MAURICE TALBOTT.

*Contract Under Seal Admissible in Action of Assumpsit to Show Obligation of Defendant—Merger of Contract for Sale in Deed—Action by Grantee of Property to Recover Taxes Paid by Him for Grantor.*

When an agreement under seal for the transfer of property states that taxes and rents are to be adjusted to the time of the transfer, an action of *assumpsit* lies to recover money paid by grantee in satisfaction of taxes and liens on the property, and the agreement is admissible in evidence to show the obligation of the defendant to make such payment.

An agreement for the transfer of property which provides for the payment of taxes and liens, is not merged in a subsequent deed conveying the property.

In an action for breach of an agreement by the defendant to pay the taxes then due and a certain sum in satisfaction of a lien on the property conveyed by him to the plaintiff, it is error to instruct the jury that the plaintiff is entitled to recover such amount as was paid by him, but it should be left to them to determine whether the sum paid was the amount actually due by the defendant.

When the grantee of property after the execution of the deed of conveyance, pays taxes due on the property by the grantor, who before the transfer had agreed to pay the same, such payment is not the voluntary payment of another's debt, and the grantee is entitled to recover the amount so paid.

*Decided April 26th, 1907.*

Appeal from the Circuit Court for Prince George's County (CRANE and MERRICK, JJ.)

The cause was submitted to the Court on brief by:

*John C. Gittings, J. Morrill Charmberlin* and *T. Van Clagett,* for the appellants.

No appearance for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellants in *assumpsit* for money which he alleged he had paid for them at their request. There are seven counts in the declaration—the first being a special one and the others common counts. The first alleges that he paid the sum of $167.63 for taxes due on some property in the city of Washington and the sum of $321.97 to reduce a lien on that property.

There was an agreement under seal by which the appellants agreed to convey to the appellee three lots in Washington, "subject only to a trust of $2,700 now of record," and that part of the agreement concluded by saying "all taxes, interest and rents to be adjusted to day of closing transaction, possession to be delivered at the same time." In consideration of that the appellee agreed to convey to James H. Fry, one of the appellants, a farm in Prince George's County, Md., subject to a mortgage or deed of trust for $3,000, and there was a provision as to taxes, interest and rents, in reference to that property, similar to that above quoted. During the trial that agreement was offered in evidence by the appellee, and the appellants objected to it on the ground that it was not admissible under the pleadings and upon the further ground that any rights under the agreement were merged in deeds, which had been executed and delivered. The Court overruled the objection and admitted the agreement, and its ruling is presented to us for review by the first bill of exceptions.

There can, of course, be no question that the action of covenant is the appropriate remedy to recover damages for the breach of an agreement under seal, and when there is a contract under seal for the payment of a definite sum of money, it can only be recovered, at law, in an action of debt or covenant. It is likewise true that an action of *assumpsit* does not lie for the recovery of damages on an instrument under seal, but it is confined to the recovery of those for breaches of parol contracts—which may be oral or in writing, not under seal. As the contract before us is under seal, it follows from what we have said that a suit in *assumpsit*

could not be maintained *on it* to recover damages for the breach of any covenant or agreement therein contained, but is this a suit on that contract, or was the appellee required to sue on it, to recover the taxes and other amounts claimed to have been paid by him? We confess that these questions were not altogether free from difficulty when we entered upon the consideration of this case, which was submitted on brief by the appellants and there was no argument or brief for the appellee, but upon reflection we have reached the conclusion that the agreement was admissible in evidence although the suit was in *assumpsit*. As we have seen above, the provision in the agreement is "all taxes, interest and rents to be adjusted to day of closing transaction, possession to be delivered at the same time." There is no express covenant or agreement to pay the taxes and interest, and even if it be conceded that there was an implied covenant that the taxes, interest and rents be adjusted to the day of closing the transaction, and that the balance be paid to whomsoever due, yet according to the theory of the plaintiff they were not adjusted—that is to say, the taxes and interest "to day of closing transaction" were not paid, and so far as disclosed by the record no rent was then collected, or deducted by the appellants, if there was any which had not been previously paid. As no purchase money was to pass between these parties, according to the written agreement, it might well be that the appellants requested the appellee to pay the taxes and interest and agreed to repay him. Indeed after the agreement was admitted, the appellee offered evidence tending to show that the appellants had agreed to pay the sum agreed upon, if he would loan them $400 and take a second mortgage on the farm, that he agreed to do so, prepared the mortgage and it was sent to the appellants but they did not execute it. They denied that and testified that the original undertaking was that each of the properties was to be subject to a lien of $2,700, and when they called the attention of the broker to the provision in the agreement that there was to be $3000 on the farm he said that he was to pay for Mr. Talbott the taxes, interest, etc.

We refer to these matters only to show that it was not only possible, but there was evidence of at least attempts to arrange for Mr. Talbott to pay the taxes and interest for the appellants.

The special count in the *nar.* alleges that the plaintiff paid the amount sued for *at the request of the defendants.* If that be true and the defendants were under obligations to pay them, there could be no valid reason why money so paid, at their request, could not be recovered in *assumpsit.* From what we have stated above, it can be seen that there was a dispute between the parties as to who should pay them, and it must be remembered that the written agreement only provided that they were "to be adjusted to day of closing transaction." Therefore, as reflecting upon the question thus at issue between them, the agreement, although under seal, was properly admitted in evidence to show upon whom the obligation rested to pay them. It was not offered as the basis of the action, but as evidence of a material fact involved in it. The case of *Curtis* v. *Flint & Pere Marquette Ry. Co.*, 32 Mich. 291, presented a very similar question. That was an action of *assumpsit* on the common money counts to recover the amount of taxes paid by the plaintiff for the use of the defendant. The duty of the defendant to pay the taxes arose upon his contract under seal for the sale of some land to the plaintiff. In Michigan there was a statute providing that in suits upon contracts under seal, or upon judgments where an action of covenant or debt could be maintained, an action of *assumpsit* could be in the same manner, in all respects as upon contracts without seal. It had been decided in *Gooding* v. *Hingston*, 20 Mich. 439, that the statute did not dispense with any special averments in the declaration which were before essential, and recovery could not be had on the common counts. JUDGE COOLEY in delivering the opinion of the Court in the Curtis case, said: "The distinction between that case and this is obvious. This action as has been stated, is brought to recover moneys paid for defendant's use; and all that is necessary to maintain such an action is to show the duty of the

defendant to pay, and the payment by the plaintiff to protect itself against injurious consequences. The duty may as well be established by a contract under seal as by any other; the action is not based upon it, but it is a matter of evidence only." That Court, through one of its Judges who so greatly helped to give it such a high standing throughout the country, thus announced the law in a case involving practically the same question that is before us, and was not in any way, as we understand the opinion, governed by the statute above referred to. Indeed it was not a suit on a contract under seal, to which the statute alone applied. If it be true that the plaintiff did pay at their request money which the defendants were under obligation to pay, then there was an implied *assumpsit* to repay it to him, and there can be no substantial reason assigned why he should not be permitted to recover it in an action of *assumpsit*, notwithstanding the agreement offered in evidence was under seal. Indeed it might well be questioned whether he could have sued on that agreement (even assuming there was an implied covenant to pay the party to whom the interest and taxes were due) if, after breach of the covenant, he had agreed to pay the amounts, but regardless of that we are of the opinion that he could, under the circumstances, sue in *assumpsit* and that the agreement under seal was admissible, for the reasons given.

The agreement was also objected to because it was merged in the deeds. When it was admitted there had been no evidence that the deeds had been executed and delivered, but if there had been they are not in the record and hence their contents are not known to us. They may have left the question undisposed of and hence it is unnecessary to discuss the effect of deeds upon previous agreements when they are offered merely as evidence, in a case such as this.

The exceptions in reference to the action of the Court on the prayers offered are not presented in accordance with the well established practice in this State, which can easily be ascertained by reference to the records of this Court and should be followed, but although irregular, they are sufficient. The

Court granted the first and second prayers of the plaintiff and the second of the defendants, and rejected the first of the defendants, their third being conceded. The defendants excepted to the granting of those of the plaintiff and to the rejection of their first.

The first of the plaintiff is "That unless the jury find from the evidence that Galen E. Green was in fact the agent of the plaintiff then they are not to consider any evidence relating to the transaction embraced in contract of March 30th, unless the same happened after the date of said contract." It is not clear just what is meant by that. It perhaps might have done the plaintiff more harm than the defendants, but such a prayer might be very misleading, not to speak of other objections. The effect of it was that if the jury found that Green was the agent of the plaintiff they could consider "any evidence relating to the transaction embraced in contract of March 30," but if they found he was not, they could consider any of such evidence, regardless of who gave it. The prayer is otherwise defective but we need not discuss it further, and it was doubtless inadvertently granted.

The plaintiff's second prayer ought also to have been rejected by reason of the conclusion, even if there had been no other objection to it. If the jury found that the defendants had agreed to pay the taxes and reduce the trust to $2,700, or authorized the plaintiff to pay the same, and further found that the plaintiff did pay them, they were instructed to find a verdict for the plaintiff "for *such an amount as they should find was paid by him* accounting to the date of transfer of the respective properties." It should have been left to the jury to determine whether what he paid was the correct amount, and not require them to allow it simply because he paid it. There is nothing to show whether the rent was adjusted or whether the plaintiff received any which had been running before the transaction was closed. As the agreement offered in evidence by the plaintiff expressly provided that taxes, interest and rents were to be adjusted, it may be that the plaintiff afterwards collected some of the rent, which was to be taken

into consideration. But neither the Court nor the jury could assume, in the absence of some admission by the defendants that the amount paid by the plaintiff was correct. The record shows the taxes were not paid until August 15th while the plaintiff testified that the deed to him was recorded in May, 1905. The *narr.* alleges he paid $167.63 and his testimony was that he paid $169.00. The *narr.* also alleges he paid $321.97 to reduce the lien while his testimony is that he paid $183.27. Of course the allegations in the *narr.* are only referred to as showing that there might well have been some question as to whether what he did pay was the correct amount due. The first part of the prayer is not altogether in accord with the special count in the *narr.*

The first prayer of the defendants was properly rejected. We do not understand why it was necessary to show that the payments were made by the plaintiff before the deeds passed, as the prayer required to be done. If they were made at the request of the defendants the mere fact that the deeds had been delivered before the payment would be immaterial. In the case of *Keator* v. *Colorado Coal, etc., Co.*, 32 Pac. Rep. 857, relied on by the defendants, the vendor sued the vendee for taxes on the property conveyed, after it had delivered the deed. The Court said that there was no individual liability on the part of the coal company under the statute and the taxes were a lien on the property conveyed, and hence payment at that time by the coal company "was precisely analogous to the payment of a debt of one person by a stranger and it is uniformly held that such a voluntary payment gives to the payer no cause of action against the person whose debt he may have liquidated." But in this case the property on which the taxes and trusts were liens was conveyed to the appellee, as a consideration for the property conveyed by him to the appellants. They were to be adjusted, as of the day the transaction was to be closed, and if they were paid at the request of the appellants there was an implied *assumpsit* to pay them to the plaintiff. The Washington property subject to a lien of $2,700 stood in the place of purchase money for the Prince George's prop-

erty, and a recovery of any excess over the lien agreed to be left on the property, paid by the appellee, was very analogous to the recovery of unpaid purchase money.    It was decided in *Wolfe* v. *Hauver*, 1 Gill, 84 (which has frequently been since affirmed), that the receipt in a deed for the conveyance of land is only a *prima facie* evidence of the payment of the purchase money, and that the vendor may maintain an action of *assumpsit* for the purchase money agreed to be paid, after the conveyance of the land and delivery of possession in pursuance to the deed. So although this is not strictly speaking purchase money, it is in effect very much like it, for if the agreement was that the trust to be left on the Washington property was to be $2,700, and not $2,883.27, payment of the difference by the appellants would have made the property conveyed by them, as payment for the other property, that much more valuable.

No other questions are presented by the record and we are not called upon to pass on the prayer of the defendants which was granted, or the one that was conceded. For error in granting the two prayers of the plaintiff, the judgment must be reversed.

> *Judgment reversed and new trial awarded, the appellee to pay the costs.*