ABEL ROSENTHAL *v.* MORRIS HEFT ET AL.
[No. 36, April Term, 1928.]

*Decided June 21st, 1928.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, and PARKE, JJ.

*Eldridge Hood Young* and *Francis E. Pegram*, for the appellant.

*J. Paul Schmidt*, with whom was *Michael Miller* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

On July 8th, 1921, Morris Heft and Bessie Heft, his wife, by their agreement under seal, bargained and sold to Abel Rosenthal seven lots of ground on Maple Avenue in Baltimore City "at and for the price of $12,000, of which $500 have been paid prior to the signing hereof, and the balance is to be paid as follows: Subject to the present mortgage, which is on the said property which amount shall be deducted of the purchase price and balance in cash on the day of transfer." On the same day Rosenthal by a similar agreement undertook to sell Heft and his wife a property known as No. 934 Madison Avenue, in that city, "at and for the price of $12,500, of which $500 have been paid prior to the signing hereof, and the balance is to be paid as follows: $4,500 in cash on the day of transfer, and balance by a first mortgage loan to the amount of $7,500 payable within five years at the rate of $200 every three months with interest." Each of those agreements concluded with this statement: "It is agreed and understood between all parties hereto that one contract is subject to the other one." The appellant said that the purpose of that clause was to make the performance of each contract depend upon the performance of the other, so that, if the Hefts refused to perform their contract in reference to the Madison Avenue property, Rosenthal would be excused from performing his contract with reference to the Maple Avenue property. Except for that the two agreements appear to have been unrelated and independent.

Following the execution of those agreements on July 20th, 1921, Mr. and Mrs. Heft by their deed of that date con-

veyed the Maple Avenue property to Abel Rosenthal and Howard S. Kroh "subject, however, to the legal operation and effect of two mortgages, one from the said Morris Heft and wife to the Provident Savings Bank of Baltimore dated 11 June, 1920, and recorded among the land records aforesaid in Liber S. C. L. No. 3601, folio 245, and the other from the said Morris Heft and wife to the Linthicum Realty Company dated 11 June, 1920, and recorded among the lands records aforesaid in Liber S. C. L. No. 3607, folio 388, and also to the conditions and restrictions contained in the aforesaid deed." The consideration stated in that deed was "$5 and divers other good and valuable considerations."

The Hefts had obtained the property, which they thus conveyed, under a deed from the Linthicum Realty Company and had executed to that company a purchase money mortgage for $4,500, subject to a prior mortgage for $6,000, given by the Hefts to the Provident Savings Bank of Baltimore, on which a balance of $5,500 was still unpaid, which it assigned to the National Fire Insurance Company of Hartford, Connecticut. $1,300 of the mortgage to the Linthicum Realty Company was paid on July 1st, 1920, so that when Rosenthal and Kroh took title to the property there remained due and unpaid on these two mortgages $3,200 to the Linthicum Realty Company and $5,500 to the Provident Savings Bank, together with such interest as may have accrued at that time.

On April 5th, 1922, the mortgage to the Provident Savings Bank being in default, the assignee instituted proceedings to foreclose it, and subsequently in that proceeding it was foreclosed, and the property sold for $5,800, which sale was in due course ratified, and an auditor's account stated, showing a deficit of $324.01, which was also finally ratified and confirmed.

On November 13th the Frontier Mortgage Company, assignee of the Linthicum Realty Company, sued Morris and Bessie Heft in the Superior Court of Baltimore City on the mortgage and mortgage notes they had given it, and it obtained, on October 22nd, 1924, a judgment against them for

$3,355, together with interest, costs of suit and a counsel fee of $100.

Following that judgment, on July 16th, 1926, the Hefts commenced an action in the Superior Court of Baltimore City against Rosenthal to recover from him the amount of the judgment which had thus been entered against them as well as the unpaid deficit on the first mortgage, on the theory that, when he purchased the property subject to the mortgages outstanding against it, he assumed the payment of them, and that, in consequence of his failure to make such payment, they, the Hefts, were still obliged to pay the amount for which they were primarily liable under the mortgages, whereby an action for such amount had accrued to them against Rosenthal.

In that proceeding the plaintiffs, on February 24th, 1927, filed an amended declaration, which contained the six common counts and a special count in which, after alleging the facts to which we have referred, they said "that by reason of the failure of the defendant to pay said mortgage indebtedness as agreed in the contract and deed aforesaid between the plaintiffs and defendant, and so assumed and agreed to be paid by the defendant herein, the defendant is therefore indebted to the plaintiffs for the sums aforesaid with interest from the respective dates as aforesaid and the plaintiffs have been put to great expense in the employment of counsel to defend the suits against them, for court costs, counsel fees, and expenses, and have sustained other losses and damages by reason of such failure of the defendant to carry out and perform his agreement to assume and pay the aforementioned mortgage indebtedness." The plaintiffs having filed the particulars of their claim, and having made profert of the deed and agreement, in answer to defendant's demand, the defendant demurred to the whole declaration and to each count thereof, and when that demurrer was overruled they filed nine pleas. To the third, fourth, fifth, sixth and ninth pleas the plaintiff demurred, joined issue on the first and second (general issue pleas) and traversed the seventh, which was a plea of payment, and the eighth, which was a plea of re-

lease. The demurrers were sustained, issue was joined on the traverse in each instance, and the case proceeded to trial, which trial resulted in a verdict and judgment for the plaintiffs for $5,081.74, from which judgment this appeal was taken.

The record contains thirteen exceptions, of which the thirteenth relates to the court's rulings on the prayers, and the others to its rulings on evidence. Those rulings together with the court's rulings on objections to the pleadings we are called upon to review.

It must be apparent from what has been said that the controlling question in the case is whether the appellant, by his deed or agreement, or either or both of them, assumed the obligation of paying the mortgages outstanding against the property which he purchased, and of protecting his vendors against any liability on account thereof. But, before dealing with that precise question, we will first dispose of certain formal matters which tend to obscure it.

The first question is whether we must consider the deed alone, or whether, in connection with it, we may consider the antecedent agreement. If the deed were full, complete, and unambiguous, that question would be free from difficulty, for, in such a case, it would be accepted as the final and exclusive agreement of the parties, in which all prior negotiations and agreements had merged. *Lawson v. Mullinix,* 104 Md. 156. But considered in connection with the questions presented by this appeal, and as between the parties to it, the deed cannot be said to be either complete or unambiguous, for, instead of naming the actual consideration which the parties had agreed on, it stated that the grant was made in consideration of the sum of "$5 and other good and valuable considerations." Manifestly that expression is too general to disclose the details of the consideration and, in an action to recover the actual consideration, recourse must be had to some source other than the deed to ascertain what it was, and, since the deed was executed in attempted compliance with an antecedent contract in which the Hefts and Rosenthal had agreed upon the consideration, we would naturally look to it

for the information. To do that would not be to contradict the deed or anything contained in it, but to make certain and definite that which it leaves uncertain and indefinite. And that distinction is exemplified by the case last cited. In that case a father granted a farm to his daughter in consideration of "$5 and the love and affection I bear to my daughter." In a suit against the daughter for the specific performance of a contract which the father had made with a third person to convey the farm to him, she attempted to show that the actual consideration was not "love and affection," but a valuable consideration, to wit, service rendered by her to the grantor, but that the court said she could not do, because that would not explain the statement of the consideration in the deed but would contradict it. But in *Mahoney v. Mackubin,* 54 Md. 268, where property subject to a mortgage was sold, but the deed made no reference to the mortgage, it was held that extrinsic testimony was admissible to show how the stated consideration was to be made up and how it was to be paid, because such testimony would not alter, vary, or affect the deed, but would merely explain an obscurity, and in that case the court allowed extrinsic evidence to be given to show that the vendee as part of the consideration undertook to assume and pay the mortgage.

The next question is whether the appellees' rights against Rosenthal, which rest in the agreement between them as to the Maple Avenue property, are affected by the fact that that property was subsequently conveyed to Rosenthal and Howard S. Kroh, as tenants in common. While Kroh was not a party to the agreement, he was one of the grantees named in the deed, and as such jointly with Rosenthal was liable for the payment of the actual consideration, whatever it was, for which the deed was executed, and the grantor was entitled to maintain an action in assumpsit for its recovery against both of them. *Wolfe v. Hauver,* 1 Gill, 92 *et seq.*

The evidence fails to show whether the original contract was abandoned, whether Rosenthal assigned to Kroh any part of the interest he acquired under the contract, or indeed why

the conveyance was to Rosenthal and Kroh instead of to Rosenthal alone, but there is evidence that the conveyance was intended to consummate the contract, and, if that was so, Kroh must have acquired with the vendor's consent a part of Rosenthal's interest in it, but he could acquire no greater rights under it than Rosenthal had.

But the only right which Rosenthal had under the contract was the right to receive a grant of the land upon paying the purchase price stipulated in it, and when the property was granted to him and Kroh as tenants in common they became jointly liable for that price. But as this action is not against them both but against Rosenthal alone, a question arises as to whether an action can be maintained against Rosenthal alone on his implied promise, arising from his acceptance of the deed, to pay the consideration agreed upon by the parties to the deed, or on the contract, or on both. The general rule, as stated in *Bryant v. Wilson,* 71 Md. 443, is that a contract for the sale of land becomes null and void when a deed conveying the property to the purchaser is executed and accepted, except where it contains collateral covenants, or where it appears that the execution of the deed was only a partial execution of the contract. 18 *C. J.* 270. But, assuming that the agreement contained a covenant to pay the purchase price, it was not a collateral covenant, but an integral part of the transaction, and the appellee himself testified that the deed was delivered to him "in consummation" of the agreement. So that any right which the vendor may have against the vendee to recover the purchase price of the property must grow out of the deed, and not out of the contract, although, as we have stated, since the deed fails to state it, the contract may be proved to show what was the agreement of the parties as to the purchase price. *Fry v. Talbott,* 106 Md. 46. Under the deed, their obligation to pay the purchase money would ordinarily be regarded as joint rather than as joint and several, since their benefit under it was joint (*Williston on Contracts,* sec. 392), and both should be joined in an action brought to recover the purchase money. But since that question is not raised by the pleading or the prayers, we will not

attempt to deal with it, but will assume that the obligation of the grantees named in the deed to pay the consideration upon which it was based was joint and several.

Returning then to the principal question, the decisions of this court and the weight of authority elsewhere support the proposition that the mere purchase of property subject to an existing mortgage does not create a personal obligation on the part of the purchaser to pay it (*Chilton v. Brooks,* 72 Md. 554), but if the purchaser assumes the payment of the mortgage as a part of the purchase price of the property, then it does become his duty to pay it, and to protect the vendor against any demands that may be made against him for the debt which it secures. 39 *Cyc.* 1632; *Lowry v. Downey,* 150 Ind. 364; 41 *C. J. "Mortgages,"* secs. 745, 757, 763. Whether he did or did not assume it, is a matter of agreement, which may be express or implied (*Ibid,* sec. 766), which may be written or rest in parol, (*Ibid,* sec. 769), and which may be separate from the deed; and such an agreement may be shown so long as it does not tend to vary or contradict the material terms of the deed. In the absence of any express agreement to the contrary, by the decided weight of authority, such an assumption will be implied where the amount of the mortgage has been deducted from the purchase money (41 *C. J. "Mortgages,"* sec. 770), under such circumstances as will fairly and reasonably indicate that the vendee intended to assume the payment of the mortgage, and parol evidence is admissible to show the existence *vel non* of such an intention. 19 *R. C. L.* 381.

In this case the deed from the Hefts to Rosenthal and Kroh purported to convey the property "subject to the legal operation and effect of" the two mortgages, and standing alone that language would mean that the vendee took only the equity of redemption, and assumed no personal liability with respect to the mortgages.

But the same deed recites that the consideration for it is $5 and "divers other good and valuable considerations," and when the contract is examined it is found that the "other

good and valuable" consideration was the purchase price of $12,000, of which $500 had been paid prior to the signing of the contract, and according to its terms the balance was to be "paid as follows: Subject to the present mortgages which is on the property which amount shall be deducted of the purchase price and balance in cash on day of transfer." The "present mortgages" with accrued interest aggregated $8,720.80, and, after adjusting taxes, water rents, stamps, etc., Rosenthal owed the Hefts a net balance of $2,738.71 on the purchase price. At the same time the Hefts owed Rosenthal a net balance on the purchase of the Madison Avenue property of $4,279.15, and, after deducting Rosenthal's debt from that, there still remained $1,540.44 due Rosenthal on the Madison Avenue property, to which was added $172 to cover an allowance for fixtures and insurance, and the Hefts gave Rosenthal a second or third mortgage for $1,700 on some properties on Lombard Street and $12 in cash, to take care of that balance. So that the only money or equivalent of money which Rosenthal paid the Hefts for the Maple Avenue property was $3,280. But under the contract of sale he had agreed to pay them $12,000. Instead of paying that sum in cash, he elected to deduct from it the sum due on account of the two mortgages, and to pay in cash or property accepted in lieu thereof $3,280. When he elected to "deduct" the amount due on the mortgages from the "purchase price," he must have "deducted" it to pay the mortgages, for otherwise, instead of deducting it from the purchase price, he would have bought the equity of redemption for the difference between the amount due on the mortgages, and the purchase price, but, in the absence of any evidence qualifying the language of the contract and the deed, we cannot assume that the Hefts intended, and that Rosenthal understood, that he was to retain out of the purchase price the amount due on the mortgages, without any obligation on his part to pay the mortgages, so as to exonerate the Hefts from any liability on account thereof. A more reasonable assumption is that by that arrangement he undertook, as a part of the purchase price, to pay the mort-

gages when and as they became due. He could not in any event be called upon to pay on account of the mortgages more for the property than the $12,000 stipulated in the agreement, but the Hefts, according to his contention, if they are required to pay any deficit due on the mortgages, will be compelled to deduct from the price which Rosenthal had agreed to pay them the amount of such deficit. Or, stated in another way, his contention is that, while he cannot be required to pay more than the purchase price on account of the mortgages, they can be required to take less. But our conclusion is the other way, and such a conclusion seems obviously fair and just, and, while the precise question is new in this state, that conclusion is supported by the weight of authority elsewhere, although there is authority to the contrary. 41 C. J. 724. The reasoning upon which it rests is very vigorously expressed in *Heid v. Vreeland,* 30 N. J. Eq. 593, in which it is said: "There can be no doubt at this day that where the purchaser of land encumbered by a mortgage, agrees to pay a particular sum as purchase money, and, on the execution of the contract of purchase, the amount of the mortgage is deducted from the consideration, and the land conveyed subject to the mortgage, that the purchaser is bound to pay the mortgage debt, whether he agreed to do so by express words or not. This obligation results necessarily from the very nature of the transaction. Having accepted the land subject to the mortgage, and kept back enough of the vendor's money to pay it, it is only common honesty that he should be required either to pay the mortgage or stand primarily liable for it. His retention of the vendor's money for the payment of the mortgage imposes upon him the duty of protecting the vendor against the mortgage debt. This must be so even according to the lowest notions of justice, for it would seem to be almost intolerably unjust to permit him to keep back the vendor's money with the understanding that he would pay the vendor's debt, and still be free from all liability for a failure to apply the money according to his promise." We think therefore that it may fairly be inferred from the evidence in this case that Rosenthal

assumed the payment of the mortgages standing against the property when he took title to it.

But appellant contends that the appellees were not entitled to recover because, although a judgment had been rendered against them for the amount of the second mortgage, and a deficiency had been established in the foreclosure of the first mortgage, the appellees had actually not paid the judgment or the deficit. It has been said that the weight of authority supports the proposition that a right of action accrues to a vendor as soon as his vendee violates an agreement to pay off existing mortgages on the property when they become due and payable (41 *C. J.* 741), but we feel that, while that is going too far, it should accrue when the liability of the mortgagor to pay it has been ascertained and fixed by a judicial judgment or decree. *Ibid.* For in such a case, whether the vendor pays it or not, such property as he may own will be subject to be taken in satisfaction of the judgment or decree, and he himself will continue to be bound by it until it is discharged by payment, satisfaction, bankruptcy, or some other method involving loss to him. And it seems unreasonable to require him to bear that burden when the vendee has agreed to exonerate him from it.

Another objection urged by appellant is that the whole transaction was a mere exchange of equities, and that the inference which might arise, from a deduction of the amount due on the mortgages on the Maple Avenue property from the purchase price thereof, that the vendee assumed the payment of the mortgages, if the transaction had been a sale for money, is not applicable to such a case. But we do not regard the transaction as necessarily an exchange of equities. The Madison Avenue property does not appear from the record to have been encumbered when the contract was made, and while Rosenthal took from the Hefts a mortgage on it for $7,500, that mortgage was given on account of the purchase price of the property, which is quite a different thing from buying a property subject to a mortgage to some third person. But aside from that, it may be inferred from the tenor and character of the agreements that the two transac-

tions were to be kept separate, except that neither was to be performed at all unless both were performed, and that proviso was incorporated in the agreements because the Hefts were apparently not able to finance their purchase of the Madison Avenue property unless they appropriated the balance they would receive from a sale of the Maple Avenue property to paying in part the purchase price of that property, and the statement of a definite purchase price for each property rather negatives the idea of an exchange, as does the language of the two agreements.

Reverting to the precise issues tendered by the appeal, the first question to be dealt with is the demurrer to the declaration and to each count thereof. Inasmuch as the six common counts are in the common stereotyped form, the objection to the whole declaration must necessarily fall, unless they are vitiated by the bill of particulars, or the documents offered in answer to the demand for oyer, or unless, because of the character of the seventh count, there has been a misjoinder of causes of action. But since the bill of particulars is a mere statement of the items of the plaintiffs' claim, while it limited the proof which might be offered under them, it certainly did not make them bad. Nor, assuming that the defendant had the right to crave oyer, which he had not, for the deed at least was a public record (Code, art. 75, sec. 28 (106); *State v. Wilson,* 107 Md. 131), it is not apparent how the common counts were vitiated by the profert of the deed and agreements. The action was not brought on the deed itself nor upon the agreement, but upon the parol promise, implied from Rosenthal's acceptance of the deed, that he would pay the consideration for the property upon which the parties had agreed, and the deed and the agreement were only relevant to show the conveyance and what the consideration was. The action was not in debt or in covenant, but in assumpsit, and the appellant by his pleas admitted that, and, since the seventh count also sounds in assumpsit, the demurrer to the whole declaration and to the six common counts was properly overruled. In the seventh count the plaintiffs stated the history of the sale of the

Maple Avenue property, the substance of the agreement between the parties, the execution of the deed, the existence of the mortgages, the agreement of the defendant to pay them, his failure to do so, and a consequent loss to the plaintiffs. The count does fail to state the true theory of the defendant's liability, in that it places it upon a supposed contract found in the agreement and deed, whereas it arises partly from the promise to pay the consideration referred to in the deed, and defined in the agreement, which may be implied from his acceptance of the deed, and partly from his agreement to deduct the amount due under the mortgages from the purchase price of the property. But the facts from which that inference may be drawn are alleged, and a mere erroneous interpretation of them will not make the whole count bad, and in our opinion the demurrer was properly overruled. The third, fourth, and fifth pleas of the defendant were simply traverses of some material allegation of the *nar.,* and equivalent to the general issue, and the demurrers to them were for that reason properly sustained. The ninth plea held bad on demurrer alleges as a bar to the plaintiffs' recovery the fact that they had not "paid off and liquidated the claims alleged against them." From what has been said it follows that, since these claims have been established by a judgment and decree, that was not a good defence.

In the sixth plea, which the court held bad on demurrer, the defendant alleges that the "alleged cause of action did not accrue within three years before this suit." The action was in general assumpsit on a parol contract, and not on either the agreement or the deed, because in neither is there to be found any express promise on the part of the defendant to assume and pay off the mortgages, and exonerate the plaintiffs from any liability on account thereof. That being true, the period of limitations applicable to the plaintiffs' claim was three years, and the plea was good. And since at least so much of the claim as covers the deficit due under the mortgage to the Provident Savings Bank appears to have accrued more than three years before the suit, the defendants were injured by that error.

The first nine exceptions relate to the action of the court in allowing the plaintiffs to prove and offer in evidence the several documents, agreements, deeds, mortgages, and records which tended to establish their claim and to which we have already referred, and, in disposing of them, it is sufficient to say that in our opinion they were relevant to the issues, and we find no error in these rulings.

One of the plaintiffs, Morris Heft, stated that when he was sued by the mortgage company, he employed attorneys, presumably to defend the suit, and he was asked, "How much did you pay us for our fee," and he was permitted over objection to say "$250." There was error in that ruling. Even if plaintiffs were entitled to recover such fees, that was no way to prove the amount due, but they should have shown what would have been reasonable compensation under the circumstances. But it does not appear from anything in the evidence that they were justified in defending that suit at all. Whatever their rights against Rosenthal may have been, they were certainly indebted to the mortgagee, who had not assented to any assignment or transfer of their liability, and they certainly ought not to be paid for defending a suit to which they knew they had no defense.

It appears that, when the property was sold, it was improved by some sort of a dwelling, which was subsequently destroyed by fire. There was at the time of the fire no insurance on the building, and the defendants attempted to charge the plaintiffs with responsibility for not having had it insured, and in connection with that effort they asked two questions designed to show the existence of the building, and that the plaintiffs occupied it, but the court refused to allow the questions, and those rulings are the subject of the eleventh and twelfth exceptions. The inquiry seems somewhat remote, but, assuming that it was relevant, substantially the same facts were subsequently shown, and we find no injury in those rulings.

The thirteenth exception deals with the prayers. The first and second prayers offered by the plaintiffs were granted. They state the proposition as a matter of law (1) that, since

under the agreement for the sale of the property the amount due on the mortgages against the Maple Avenue property was deducted by the purchaser from the purchase price, a presumption arose that he had assumed a personal obligation to pay them and to exonerate the vendor from any liability on account thereof, and (2) that upon his failure to make such payments an action accrued to the plaintiffs. The second clause of that proposition as a mere abstraction goes too far, and in our opinion the sounder and the better rule is that no right of action accrued to the vendors until their liability has been judicially determined, or until they had paid the mortgage debts. There was no injury in this case, however, because it appears that such liability had been judicially determined.

There was also a special exception to the plaintiff's second prayer, but the grounds of the exception have been covered by what has already been said, and it is unnecessary to refer to that ruling further than to say that the exceptions were properly overruled.

The defendant offered twelve prayers, of which the first five, A, B, C, D, and E, were in one form or another demurrers to the evidence. For reasons already stated they were properly refused.

By his second prayer appellant undertook to have the jury told that, in determining whether he had agreed to pay the mortgages, they were not at liberty to consider the contract of sale and the deed. That proposition was manifestly untenable and the prayer was properly refused. His third prayer, which was also refused, denied the plaintiff's right to recover unless they had actually paid off the balance due on the mortgages, and that too, from what has been said in reference to the plaintiff's prayers, was properly refused. His fifth prayer asserts the theory that, unless in the deed poll by which the Maple Avenue property was conveyed to Rosenthal and Kroh, Rosenthal expressly covenanted or agreed to assume the mortgages, that the plaintiffs could not recover. His sixth prayer somewhat more obscurely phrased appears to involve the same proposition. His seventh prayer

instructed the jury that, if they found that in the transaction between Rosenthal and the Hefts the respective balances due by them on the properties respectively purchased by them were to be set off against each other, and that the defendant discharged the balance due by him, the plaintiffs were not entitled to recover. These prayers were all refused, and without restating them, for reasons already given, there was no error in those rulings.

But for the errors involved in sustaining the demurrer to the defendant's sixth plea, and in the tenth exception, the judgment appealed from will be reversed, and the case remanded for a new trial.

*Judgment reversed with costs, and case remanded for a new trial.*