EAST END LOAN & SAVINGS ASSOCIATION *v.* MORRIS BERMAN

[No. 37, April Term, 1936.]

*Decided June 9th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Charles P. Coady,* with whom were *Charles P. Coady, Jr.,* and *Coady & Farley,* on the brief, for the appellant.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court No. 2 of Baltimore City, overruling the motion of East End Loan & Savings Association of Baltimore City for a decree *in personam* against Morris Berman.

On September 8th, 1930, Berman received from the association an advance of $1,700 upon seventeen shares of its stock, and to secure the payment thereof, with interest, executed a mortgage upon certain property located upon Belvidere Avenue, which mortgage contained an assent to the passage of a decree for the sale of the property described therein, to take place "at any time after any default in any condition" thereof.

On January 6th, 1932, Berman conveyed the property

to William T. Gingrich, subject to the legal operation and effect of the mortgage, in which default occurred prior to December 11th, 1933, on which date, by petition of the mortgagee, a decree was passed for the sale of the mortgaged premises, and after sale the auditor's report showed a deficiency of $390.72 due the mortgagee. It was for this amount that the motion for a decree *in personam* was made.

Berman, the mortgagor, testified that shortly before making the deed of conveyance, he, his wife, and Gingrich called at the office of the mortgagee to learn if the mortgage could be transferred to Gingrich. He was then referred to Hahn, the president, whom he subsequently found and asked the same question, and received a reply that the matter would be considered if he would bring Gingrich over to talk with him, and he also added "but you have to pay fifty cents a share to transfer it to Gingrich"; that he went home, talked it over with Gingrich, who was satisfied, and then took Gingrich over to see the president, at which time Gingrich gave him a card which showed what kind of business he was in, and the president told Berman that he was satisfied for the property to be transferred to Gingrich; that he made the transfer and Gingrich wanted to make a payment so he could take the property, and he again went to the president, who said that Berman would first have to pay eight dollars otherwise he could not accept any payments from Gingrich. Berman then paid the eight dollars and was told by the president, "You have nothing to do with the property," as Gingrich would pay. The payment was based upon fifty cents per share. From that time on Berman made no payments upon the mortgage and no demand was made upon him for any payments, neither did the mortgagee send him any notice of a default in the mortgage. Mrs. Yetta Berman also testified to having seen her husband pay the mortgagee's president eight dollars. Between this time and May 26th, 1933, the mortgage was reduced by approximately $200, and it is clear from the record that such payments were made

by Gingrich. On the date last mentioned, he received a letter from counsel for the mortgagee, reminding him that their client held a mortgage upon the Belvidere Avenue property, and that he had previously made definite promises to pay up all arrearages within thirty days, which promises he had not kept, and the property would be sold, unless such payments were made promptly.

The mortgagee's president having died, its secretary was its only witness. He testified that he found nothing upon the books to indicate that any tranfer fee was paid, either by Berman or Gingrich, that he did not recall having told Berman to speak to the president about transferring the mortgage, and the first thing he knew about it was when Gingrich came down and stated he owned the property. He did not know what arrangements might have been made by the president.

Were these facts sufficient to justify the entry of a deficiency decree against Berman? The case of *Pennsylvania Avenue Permanent Bldg. & Loan Assn. v. Dubin*, 165 Md. 555, 170 A. 169, 170, is with one exception strikingly analogous to the situation here under consideration. It was there held that a mortgagor was not released from his personal liability for the mortgage debt by reason of the fact that, upon his transfer of the mortgaged property to one who did not assume the debt, a transfer fee was paid by the vendee to the mortgagee, a building and loan association, and accepted by the latter. Judge Pattison there said:

"This is not a case where a grantee covenants or by apt terms assumes to pay a mortgage debt charged on the granted premises for the payment of which the grantor is bound, from which the relation of principal and surety arises; and an extension of the time of payment of the mortgage debt by valid agreement by the mortgagee without the consent of the mortgagor or grantor will release the grantor from personal liability. *Chilton v. Brooks*, 72 Md. (554), 557, 20 A. 125.

"In this case, the grantee did not assume the covenants or the payment of the mortgage indebtedness, and

the relation of principal and surety did not exist between the mortgagor and the grantee; but the mortgagor remained the principal debtor. *Chilton v. Brooks, supra; George v. Andrews,* 60 Md. 26; *Asbell v. Marshall Bldg. & Loan Assn.,* 156 Md. (106), 111, 143 A. 715."

However, in that case Dubin, the original mortgagor, had notice of the default prior to the institution of the proceedings to foreclose, and had several times suggested to the association not to take any steps toward foreclosure. These facts strongly indicated that the building and loan association throughout the transaction recognized him as the principal debtor, and he himself fully understood that he was the principal debtor; whereas in the present case, according to the undisputed testimony, the president of the mortgagee, before consenting to a transfer of Berman's shares of stock, made an investigation as to Gingrich, the vendee, as a result of which he accepted the transfer fee, and at the same time told Berman, the mortgagor, that he (Berman) had nothing further to do with the matter, since Gingrich would pay the mortgage. Moreover, from that time on, the building and loan association had no further dealings with Berman in relation to the mortgage, and when it was threatening to foreclose it communicated with Gingrich only. But since there is nothing to show that the amount of the mortgage was deducted in the settlement between Berman and Gingrich, nor any circumstances existing that would fairly indicate such, notwithstanding the conduct of the building and loan association, both at the time of the transfer of the property to Gingrich and subsequently thereto, there is no warrant for holding that Gingrich assumed the mortgage indebtedness, and, in view of this, it must follow that Berman at no time could have become surety for the payment thereof. *Chilton v. Brooks, supra; George v. Andrews, supra; Asbell v. Marshall Bldg. & Loan Assn.,* 156 Md. 106, 111, 143 A. 715; *Rosenthal v. Heft,* 155 Md. 410, 419, 142 A. 598.

In the case last cited, it was held that the mere purchase of property subject to an existing mortgage did

not create an obligation on the part of the purchaser to pay it, unless its payment was assumed as a part of the purchase price of the property, and that whether the purchaser assumed payment of a mortgage was a matter of agreement, which might be express or implied, written or in parol, and even separate from the deed.

We are also of the opinion that the testimony is insufficient to establish the existence of a novation. *Restatement of the Law of Contracts,* vol. 2, sec. 425; 2 *Jones on Mortgages,* sec. 741; *Brantley on Contracts* (2nd Ed.), sec. 175; *Anson on Contracts* (Am. Ed.), sec. 355; *Chatterley v. Safe Deposit & Trust Co.,* 168 Md. 656, 660, 178 A. 854; *Baltimore Academy of Visitation v. Schapiro,* 169 Md. 332, 181 A. 731; *District National Bank of Washington v. Mordecai,* 133 Md. 419, 105 A. 586, and cases there cited.

Appellant's right, therefore, to a decree *in personam* against Berman for the balance due under the mortgage as shown by the audit, unless it is equitably estopped to assert the same, is beyond question. It is the view of this court that the undisputed facts in the case, heretofore stated in detail, are sufficient to raise an equitable estoppel as against appellant herein. At the time Berman interviewed appellant's president with reference to a transfer of the mortgage, he had not conveyed the property to Gingrich, and did so only upon the assurance from the president that, upon payment of the transfer fee, the mortgage would be transferred, and he had nothing further to do with the property. This was early in January, 1932. Relying upon the understanding with appellant's president, the transfer was made, and so far as the record shows, neither he nor appellant considered that he had any further concern with the matter until May 1st, 1935, when a motion for a deficiency decree was filed. It is a fair inference that Berman would not have conveyed the property to Gingrich but for the assurance of appellant's president that henceforth he had no further responsibility in the matter. To permit appellant at this time to repudiate such understanding which Berman

has in good faith observed would result in an injustice to him which will not be countenanced in equity. 10 *R. C. L.*, p. 694; *Maryland Tel. & Tel. Co. v. Ruth,* 106 Md. 644, 68 A. 358; *Eareckson v. Rogers,* 112 Md. 160, 75 A. 513; *Rodgers v. John,* 131 Md. 455, 102 A. 549; *First National Bank of Catonsville v. Carter,* 132 Md. 218, 103 A. 463; *Seymour v. Finance & Guaranty Co.,* 155 Md. 514, 142 A. 710.

The order appealed from will be affirmed.

*Order affirmed, with costs to appellee.*