SAFE DEPOSIT & TRUST COMPANY, TRUSTEE, *v.* LORETTA P. STRAUFF

[Nos. 49, 50, October Term, 1936.]

306

*Decided January 13th, 1937.*

The causes were argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*John Harwood Stanford* and *R. Contee Rose,* with whom was *James Morfit Mullen* on the brief, for the appellant.

*J. Britain Winter,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

Appellant, Safe Deposit & Trust Company of Baltimore, a body corporate, trustee under a deed from Mary B. Torrington, filed two suits in the Baltimore City Court, one against Loretta P. Strauff, executrix of the last will and testament of Edward A. Strauff, deceased, and the other against Loretta P. Strauff individually. Each suit was brought to recover the sum of $3,439.38, being the amount of deficiency as shown by the auditor's account in a proceeding instituted in the Circuit Court for Baltimore City by appellant for foreclosure of a $10,000 mortgage from Douglas W. Chatterley and wife to it, dated October 7th, 1925, which was a first lien upon certain premises known as 614 West Fortieth Street, of Baltimore City. The cases came on for trial before the court, sitting as a jury, after issue was joined on the general issue pleas filed by each defendant, and on a special plea filed by Loretta P. Strauff individually, alleging she had never signed the extension agreements mentioned in the declaration; and both were heard together. At the conclusion of the testimony, the court

granted in each case a prayer instructing itself, sitting as a jury, that no evidence had been offered legally sufficient to entitle the plaintiff to recover, and its verdict must be in favor of the defendant. Judgment absolute on the verdicts and in favor of each defendant was subsequently entered, and from these judgments the plaintiff below has appealed. The sole exception in each appeal is taken to the action of the trial court in granting the prayers above referred to, and, since the questions presented by each appeal are practically identical, both appeals will be considered together.

The suits are an outgrowth of the decision of this court in *Chatterley v. Safe Deposit & Trust Co.*, 168 Md. 656, 657, 178 A. 854, in which we reviewed the action of the Circuit Court of Baltimore City in entering a deficiency decree against Chatterley and wife in favor of the present appellant. That case was decided upon certain testimony and an agreed statement of facts, which we held sufficient to show that appellants therein, Chatterley and wife, had been released by virtue of a novation that arose by reason of the dealings between the trust company, Chatterley and wife, and Edward P. Strauff and wife, whereby the latter had agreed to pay the mortgage indebtedness, and had been accepted by the trust company as its debtors, and upon that theory the present suits were instituted. However, Strauff and wife were not parties to that proceeding, had no opportunity to be heard therein, and are not bound thereby.

The granted prayers make no reference to the pleadings, but relate solely to the insufficiency of the evidence in support of the plaintiff's right to recover under the declaration, which sufficiently alleges liability against each defendant upon the ground of novation, as well as upon the theory that they become liable for the mortgage deficiency because of having assumed the payment of the $10,000 mortgage, and, since on appeal the sole question argued relates to the court's action in granting these demurrer prayers to the evidence, our consideration of the case will be limited to that issue, and because the

evidence in the case, especially as to Loretta P. Strauff, differs materially from that upon which the decision was based in *Chatterley v. Safe Deposit & Trust Company, supra,* it becomes necessary to review it, and for convenience the same will be stated in narrative form.

On October 7th, 1925, Douglas W. Chatterley and wife executed unto appellant as trustee a $10,000 mortgage payable three years from date, bearing interest at five and one-half per cent. per annum upon the property previously mentioned. The mortgage was in the form customarily used in Baltimore City, contained no restriction as to alienation by the mortgagors, but did contain a covenant whereby, until default was made in its conditions, the mortgagors, their heirs or assigns, should have possession of the property upon paying all taxes, assessments, public dues, and charges assessed on the property, and "on the mortgage debt and interest, which mortgage debt and interest, taxes * * * and charges, the said mortgagors covenanted to pay when legally due. * * * *" On March 17th, 1926, Chatterley was visited by a representative of Albert P. Strobel, Jr. & Co., real estate brokers, in regard to selling the property to Strauff, and, after some preliminary negotiations, he and his wife entered into a contract with Strauff for the sale of the property at $19,250, $500 of which was paid in cash, the remainder payable on or before May 1st, 1926. On the day following its execution, Chatterley, at the request of Strauff, interviewed the real estate officer of the trust company and informed him thereof, and asked if Strauff would be acceptable to the company, as Strauff desired the mortgage to remain upon the property to avoid refinancing. The real estate officer assured Chatterley that he would give him an answer after he "looked up Strauff," and, not receiving an answer, he returned to the same office a few days later, and was assured that Strauff would be perfectly satisfactory to the trust company. Strauff, receiving this information, was entirely satisfied, and he and his wife moved into the property on April 17th, 1926, remaining there for

several years. Chatterley received from the trust company a notice for six months' interest which became due in October, 1926, which he took to the cashier of the trust company, with the explanation that he was no longer interested in the mortgage or in the property, and from that time received no further notice from the trust company concerning the mortgage until February 10th, 1934, after it had been filed for foreclosure. In the agreement between Chatterley and wife and Strauff the latter assumed "the present first mortgage of $10,000.00 with interest at 5½%." However, because of some contention raised by the vendee concerning the depth of the property and a ten-foot alley which ran across it, final settlement was not made until August 1st, 1926, and, according to the memorandum by which they settled and the testimony of Chatterley, it appears that, while settlement was on the basis of $18,500, Chatterley at least in addition thereto retained the $500 initial payment. In the final settlement the $10,000 mortgage was deducted from the purchase price, as was likewise a second mortgage upon the property, broker's commissions, and adjustments of taxes, water rents, and insurance to that date, leaving a net balance due Chatterley of $5,755.75, which was paid by Edward A. Strauff with three checks, and at the direction of Strauff the property was by deed, bearing date of July 31st, 1926, conveyed by Chatterley and wife to Frederick R. Peddicord and wife, the habendum clause of which deed contained a provision that it was subject to the legal operation and effect of the $10,000 mortgage held by the trust company. Peddicord and wife reconveyed the property to Edward A. Strauff and Loretta P. Strauff, his wife, as tenants by the entireties, by deed dated February 4th, 1927, but no mention of the mortgage was made in that conveyance. Moreover, the deeds last mentioned were executed simultaneously, and the Peddicords had no interest in the transaction, but acted at the request and for the accommodation of Edward A. Strauff.

From the time of the execution of the contract of sale

in 1926, Strauff and wife owned the property until May 15th, 1933, when they conveyed it to Charles M. Perrigoy and wife, and between those dates Strauff paid the interest which accrued upon the mortgage and also the taxes upon the property. The mortgage, by its terms, was due on October 7th, 1928, and about this time plaintiff and Strauff began negotiations for an extension of the time for its payment, these being consummated November 28th, 1928, reading as follows:

"It is hereby understood and agreed between the undersigned that the time for the payment of the $10,000 mortgage debt of Douglas W. Chatterley and Julia B. Chatterley, his wife, secured by mortgage on 614 W. Fortieth Street, Roland Park, in fee, as set forth in said mortgage dated October 7th, 1925, and recorded among the Land Records of Baltimore City in Liber S. C. L. 4467, folio 586, is hereby extended for a period of two years from October 7th, 1928, the said sum to bear interest at the rate of 5½% per annum, payable semi-annually— all the terms, covenants, conditions, rights and remedies in said mortgage contained to remain in full force and effect."

That agreement was executed on behalf of the trust company by its real estate officer and undoubtedly signed and sealed by Edward A. Strauff, and purports to have been signed and sealed by Loretta P. Strauff. At its expiration, further negotiations were entered into between Strauff and plaintiff, with the results that a further agreement was made on January 28th, 1931, by which the time for payment was extended until October 7th, 1933, and this likewise was signed and sealed by Strauff and purports to have been signed and sealed by his wife. However, plaintiff's dealings with Strauff in relation to the extensions were carried on by correspondence, and through this medium it received the two agreements, the execution of which is denied by Mrs. Strauff in her fourth special plea.

On September 26th, 1933, the trust company addressed a letter to Strauff, advising him that the mortgage would

become due on October 7th, and on October 20th of the same year addressed a second letter to him requesting payment of the mortgage, but received no reply to either letter, he having previously departed this life, and, after learning of his demise, it wrote a third letter, on November 18th, to his executrix requesting settlement of the $10,000 mortgage, which had previously matured. It is also conceded that the claim was proved in the Orphans' Court for Baltimore City and that liability thereon was denied by the executrix of Strauff prior to the institution of the suit.

If believed by the jury this evidence was sufficient to support a finding for the plaintiff in the suit against Loretta P. Strauff, executrix, as it strongly indicated that Edward A. Strauff in the contract of sale expressly assumed payment of the mortgage. Appellees insist that this contract was canceled, because, from two of the three originals thereof which were produced from the files of defendant's counsel at the trial, it appeared that the signatures had been removed, but there was no showing as to who removed them, nor that at the time of their removal the contract had not been performed. The memorandum of settlement lends force to the contention that no change was made in the contract, except as to the reduction in purchase price, as in the settlement Strauff deducted the mortgage which he assumed in the contract. In spite of appellee's contention that this contract had been canceled, the evidence to the contrary is sufficient to require its submission to the jury.

It is further insisted that the execution of the deed for the property effected a merger of the contract, and therefore the terms of the latter are inadmissible, but a similar contention was made in *Rosenthal v. Heft*, 155 Md. 410, 419, 142 A. 598, 603. There, as in the deed from Chatterley and wife to Peddicords, the property was conveyed "subject to the legal operation and effect of" certain mortgages, and the true consideration was not stated, but this court held that the terms of the contract were admissible to show such consideration, one of the elements of which

was that the grantee in the settlement deducted the amount of the mortgages. It was there stated: "When he elected to 'deduct' the amount due on the mortgages from the 'purchase price,' he must have 'deducted' it to pay the mortgages, for otherwise, instead of deducting it from the purchase price, he would have bought the equity of redemption for the difference between the amount due on the mortgages, and the purchase price, but, in the absence of any evidence qualifying the language of the contract and the deed, we cannot assume that the Hefts intended, and that Rosenthal understood, that he was to retain out of the purchase price the amount due on the mortgages, without any obligation on his part to pay the mortgages so as to exonerate the Hefts from any liability on account thereof."

The fact that Strauff began occupying the property shortly after the execution of the contract, about which time he made arrangements with appellant through Chatterly for it to look to him for payment of the mortgage, is also important, for, since it did not mature until almost three years thereafter, there was no occasion for such an arrangement, except upon the theory that, as expressed in his contract and in the subsequent memorandum of settlement, the amount of the first mortgage was assumed by him as a part of the purchase price for the property. Indeed, the reason he gave for requesting the trust company to look to him for payment of the mortgage was to save him from refinancing. In addition, his acts in securing from the trust company two agreements by which the time for the payment of the mortgage was ultimately extended five years, his payment of interest, taxes, and assessments throughout the period, likewise indicate that he had assumed payment of the mortgage, and, since this was a part of the purchase price, there can be no doubt that the liability he thus assumed was based upon a consideration moving to him.

Appellee contends that, notwithstanding this evidence that Strauff assumed payment of the mortgage, he is not liable herein for the deficiency, and relies upon *Scherr v.*

*Preston Bldg. & Loan Assn.*, 166 Md. 106, 170 A. 197, but that case simply decides that, although such liability is assumed by a purchaser, it does not make him a party to the mortgage and its covenants, and he in an action thereon cannot be proceeded against in equity or at law. But compare that decision with *East Vedado Corp. v. E. S. Adkins & Co.*, 157 Md. 416, 146 A. 385. See also *Rosenthal v. Heft, supra; Mashkes v. Bldg. & Loan Assn.*, 167 Md. 270, 173 A. 54; *East End Loan Assn. v. Berman*, 170 Md. 536, 185 A. 332; 2 *Jones on Mortgages* (8th Ed.) secs. 948-957; 19 *R. C. L.* p. 374, par. 145; 41 *C. J.* pp. 743 to 770.

The observations heretofore made concerning the evidence, plus the further fact that, from the time Strauff was accepted by the plaintiff as its debtor, the plaintiff observed its agreement with Chatterley by looking solely to Strauff and not asserting any liability against Chatterley until almost eight years later, after it had learned of Strauff's death, and only then after having called upon his executrix for settlement of the mortgage, were factors responsible for the decision in the *Chatterley* case that a novation had arisen, and we see no reason from the facts in this record to change that view.

Appellee insists that, since intention is always an important factor in novation, appellant is now estopped from asserting liability upon that ground because of its attempt to sustain the deficiency decree against Chatterley and wife. No authority is cited for that proposition, but we may add that in the former case we found the existence of a novation, notwithstanding the efforts of the trust company therein to hold Chatterley and wife responsible for the deficiency, and since in the present case we have determined that on this question the evidence is sufficient for submission to the jury, it becomes difficult to understand how appellant is to be deprived of enforcing rights which we have previously held it enjoyed. Holding as we do that the evidence offered was sufficient to enable the jury to find for the plaintiff on the theory of novation, as well as upon the further theory that Strauff ex-

pressly assumed and at least impliedly promised to pay the plaintiff the mortgage indebtedness from which the deficiency arose, there was error in granting the defendant's prayer which withdrew the case from the consideration of the court, sitting as a jury.

But was the demurrer prayer properly granted in the case against Mrs. Strauff, individually? She was not a party to the original contract of sale and took no part in the negotiations with the trust company, whereby they agreed to accept Strauff as debtor, and, so far as is disclosed by the record, she had no knowledge of these transactions. Moreover, she was not present when settlement was made for the property, at which time the amount of the mortgage was deducted from the purchase price, and by plea seasonably interposed she denied having executed the two extension agreements which bear her name. The property was conveyed to her and her husband under a tenancy by the entireties, and she occupied it jointly with him for some years. But these facts, standing alone, are, in our judgment, insufficient to create an inference that throughout all these transactions the husband acted as her agent. The rule respecting such agency is stated in *Mechem on Agency* (2nd Ed.) par. 169, as follows: "It has been seen that within the limits of her power under modern statutes to enter into contracts, acquire, manage and dispose of property and carry on business a married woman may act by agent, and it is well settled that her husband may be the agent. A husband has, however, by virtue of his relation alone, no implied power to act as the agent of his wife in the transaction of her business. Whatever authority he exercises in that capacity must be derived as in the case of any other agent from her prior appointment either express or implied, or be confirmed by her subsequent ratification. He may, however, be authorized in the same manner and be invested with the same power and authority as any other agent, and when duly authorized his acts bind her, within the limits of her capacity, and of his authority, to the same extent as though she acted in person."

See, also, 21 *R. C. L.* p. 858, par. 36, from which we quote: "As against one who has assumed to act as the agent of another, the presumption is that he had authority to do the acts in question; but a person who has availed himself of the act of an agent in order to charge the principal must prove the authority under which the agent acted. In other words he has cast upon him the burden of establishing the agent's authority to bind his principal by the contract in controversy."

Again in 30 *C. J.* p. 614, it is stated: "The mere relation of husband and wife does not create the wife an agent of the husband nor confer on her inherent power to bind the husband as his agent."

And in volume 2 *C. J. S., Agency*, p. 1048, it is stated that, while mere relationship of family ties, unaccompanied by any other facts or circumstances, will not justify an inference of agency, such relationship is entitled to great weight when considered with other circumstances as tending to establish the fact of agency.

The decision of this court in *Adkins & Douglas Co. v. Webb*, 160 Md. 571, 572, 154 A. 259, is in entire accord with the principles above stated. There the appellant sought to secure a mechanic's lien for materials furnished by it upon the order of the husband in the construction of a house upon the real estate of Mrs. Webb, to whom it had previously given no notice, as required by the statute, of its intention to file a lien. It was held that knowledge by her of the husband's intention to construct the building on her property, together with her failure to interpose objection, were not sufficient circumstances to constitute agency. The cases of *Meyer v. Frenkil*, 116 Md. 411, 412, 82 A. 208, and *Employers' Liability Assurance Corp. v. Perkins*, 169 Md. 269, 281, 181, A. 436, relied upon by appellant, are not analogous to the situation here under consideration, for in each of those the acts of the wives were not disavowed by the husbands.

Since in this case the facts are insufficient to create an inference that Edward A. Strauff was acting as the agent of Loretta P. Strauff, the evidence was not sufficient

to support a verdict for the plaintiff. Therefore the demurrer prayer to the evidence was properly granted.

The judgment in No. 49 will be reversed and cause remanded for a new trial, while in No. 50 it will be affirmed.

> *Judgment in No. 49 reversed and cause remanded, with costs to appellant.*
>
> *Judgment in No. 50 affirmed, with costs to appellee.*