TWILLEY ET UX. *v.* BROMLEY ET UX.
[No. 100, October Term, 1948.]

*Decided March 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William W. Travers* and *Vaughn E. Richardson* for the appellants.

*W. Edgar Porter*, with whom was *Richard E. Cullen* on the brief, for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree for specific performance of a contract of sale of real estate. In the opinion of the lower court the case is stated thus:

"In this suit the complainants seek a decree for the specific performance of their contract to purchase a lot, improved by a dwelling house, located at the corner of Holland Avenue and Grace Street, in Salisbury, Maryland.

"The facts in this case are practically undisputed. The pertinent facts are as follows; the property is owned by the defendants, Milford W. Twilley and Buela W. Twilley, his wife, as tenants by the entireties; on February 25, 1948 Milford W. Twilley executed an agreement with S. Franklin Woodcock, a real estate dealer of Salisbury, Maryland, authorizing and empowering the said Woodcock to advertise and sell at public auction during the month of March 1948 the property in question and many other properties belonging to the Twilleys; Mrs. Twilley's name was signed to this agreement by her husband; Mr. Woodcock advertised the properties by radio, by handbills and by newspaper for sale on March 20, 1948; at the sale the complainants became the purchasers of the property with which we are here concerned at the price of Sixty-four Hundred Dollars ($6,400.00), which was the highest bid therefor at the public sale; the complainants on the same day signed a contract for the purchase of said property and delivered the same to Mr. Woodcock; the complainants are ready, willing and able to consummate the transaction but the defendants refuse to execute a deed for the property.

"There is no evidence that Mrs. Twilley ever gave her husband any direct or specific authority to act as her agent in this transaction or in any similar transaction. Nor is there any evidence that she has ratified his acts with respect to this sale. The real question for determination here is whether or not the agency of the husband to act for and bind the wife may be implied from the past habit and course of conduct between the parties."

In this court complainants feebly suggest that even if there was not an agency in fact, there was an agency by estoppel by holding out the husband as an apparent agent. There is no basis in the evidence for agency by estoppel. There is no evidence that complainants even knew who the owners were. In the handbills and newspaper advertisements only Mr. Woodcock's name was mentioned, not the owners'. There is no evidence that the husband had ever before signed his wife's name, with

or without authority, to any contract or other instrument. As the lower court says: "The case of *Abuc Trading and Sales Corporation v. Jennings,* 151 Md. 392, [410-412, 135 A. 166], holds that where an agency arises by implication from acts and conduct indicating an intent to create it, the acts and conduct of the principal from which it is inferred need not be known to the person seeking to charge the principal, as the agency in such case is not based on the theory of estoppel."

In reviewing authorities in this court and elsewhere the lower court quotes, *inter alia:* "See, also 21 *R. C. L.* p. 858, par. 36, from which we quote: 'As against one who has assumed to act as the agent of another, the presumption is that he had authority to do the acts in question; but a person who has availed himself of the act of an agent in order to charge the principal must prove the authority under which the agent acted. In other words he has cast upon him the burden of establishing the agent's authority to bind his principal by the contract in controversy.'

"Again in 30 *C. J.* p. 614, it is stated: 'The mere relation of husband and wife does not create the wife an agent of the husband nor confer on her inherent power to bind the husband as her agent.'

"And in volume *2 C. J. S.,* Agency [§ 23], p. 1048, it is stated that, while mere relationship of family ties, unaccompanied by any other facts or circumstances, will not justify an inference of agency, such relationship is entitled to great weight when considered with other circumstances as tending to establish the fact of agency." *Safe Deposit & Trust Co. v. Strauff,* 171 Md. 305, 316, 189 A. 195.

After reviewing authorities the court applies them to the facts thus: "With these general principles in mind let us examine the evidence in this case. The evidence discloses that Mr. Twilley is a builder; that during the last several years he has bought property, always placing it in the name of himself and wife as tenants by the

entireties, built houses thereon, and sold the houses. Mr. Twilley testifies that there were 25 or 30 such transactions during the last three years and that they were all bought, built and sold without any discussion with his wife, although she was interested in them as one of the tenants by the entireties. His testimony is 'I never talked things like that with my wife. Never did.' When asked if his wife knew that this particular auction sale was to be held by Mr. Woodcock, his reply was as follows: 'I had said something to her I thought I would sell some property. I never said no more about it than that. I just didn't elaborate on it one way or the other.' When asked why the several properties were listed in the Woodcock contract, he replied: 'As a matter of fact, I wanted to raise some money. This seemed like the way to do it. My wife had always signed whatever papers I asked her to sign. I had no reason to believe she wouldn't sign this.' The testimony of Mrs. Twilley is to the effect that she had signed all papers which her husband had requested her to sign in respect to his real estate transactions, except one mortgage to a member of the family [his father]. She testified specifically: 'I don't interfere when he has a business deal. He brings a paper home to me and says this is so and so. I sign it.' She also testified that when Mr. Woodcock had sold other property under a similar contract not executed by her, a few months previously, she had executed the deeds without any protest. [The appendices to the briefs do not contain testimony which shows that before February 25, 1948 her husband had ever signed her name to a similar contract. Apparently he did so on March 1, 1948, and before February 25, 1948 had negotiated a particular sale through Mr. Woodcock, which she accepted and carried out.] Her objection to executing the deed in this particular instance seems to be based upon some understanding between her husband and herself as to the collection of the rents therefrom and the appropriation of the same to her individual use. But we do not think that this is sufficient to avoid the implied authority which

had been conferred by her upon her husband by the manner in which she had allowed him to deal with the public with respect to all the properties which were held in their names as tenants by the entireties for several years prior to the sale in the instant case.

"Applying the facts as we see them to the general principles of law which we have stated above, we have reached the conclusion that Mrs. Twilley is bound by the acts of her husband with respect to the property involved in this case, by reason of the implied authority conferred upon him by her entire course of conduct and that, therefore, the contract should be specifically enforced."

On the evidence and the facts, we reach an opposite conclusion. As was said in *Safe Deposit & Trust Co. v. Strauff, supra* (quoted by the lower court), the burden of showing agency is upon complainants (see also *Adkins & Douglas Co. v. Webb*, 160 Md. 571, 577, 583, 154 A. 259), and the mere relation of husband and wife does not create the one an agent of the other or confer inherent power to bind the other as agent, or, unaccompanied by other facts or circumstances, justify an inference of agency. If a wife pays her husband's debts—or a mother her son's—thirty times, whenever asked to do so, she may thereby engender a hope, not wholly irrational, that she will continue to do so, but she does not, by that alone, obligate herself to do so, or empower him to obligate her, or estop herself from disappointing hope the thirty-first time. A person who herself repeatedly and invariably makes sales, purchases or other business transactions negotiated and suggested by her husband, lawyer, banker or broker does not thereby make the husband, lawyer, banker or broker her agent with authority to sign her name to a promissory note, a power of attorney or other contract or to make or contract to make, as her agent, a similar sale, purchase or other transaction without action or ratification on her part. Neither the existence of the relationship of husband and wife, standing alone, nor knowledge by her of his intention to make improvements on her property, together with failure on her part

to object, is sufficient to constitute him her agent in making the improvements and necessary expense therefor. *Krauss v. Litman,* 189 Md. 394, 399, 56 A. 2d 37, 39, and cases cited; *cf. Weininger v. Weininger,* 140 Md. 227, 117 A. 568 ;*Milburn v. Michel,* 137 Md. 415, 112 A. 581; *Abrams v. Eckenrode,* 136 Md. 244, 110 A. 468; *Hartman v. Thompson,* 104 Md. 389, 408, 65 A. 117, 118 Am. St. Rep. 422, 10 Ann. Cas. 92.

We may assume, however, without deciding, that knowledge of the wife that a sale of her property at auction was being advertised, and expense thereby incurred, without objection on her part, would amount to ratification, or evidence previous authorization, of the sale by her. One disposed to be suspicious might suspect that, as she read the local newspaper and listened to the radio, she must have known of the sale before it was made. Any such suspicion would be diluted by the fact that the printed advertisements were only in Mr. Woodcock's name, the owners' name was not mentioned, and the property was one of fourteen items in the advertisement and one of eighty-odd properties advertised and was mentioned only by location without even a street number. In the circumstances it would seem that only a newspaper or radio addict would be likely to discover that her property was to be sold. In any event, suspicion is not proof. As the lower court says, there is no evidence of ratification or specific authorization.

Most of the cases in which a wife has been held bound by her husband's acts as her agent or apparent agent are cases of ratification or agency by estoppel, or both. *Boehm v. Boehm,* 182 Md. 254, 34 A. 2d 447; *Krauss v. Litman, supra; Kvedera v. Mondravitzky,* 145 Md 260, 125 A. 591; *Saul v. McIntyre,* 190 Md. 31, 57 A. 2d 272; *Id.,* 192 Md. 413, 64 A. 2d 282. We think the lower court, after stating the difference between agency by estoppel (which is not actual agency at all) and agency by implication, confused this difference in applying it to the facts. As we have said, there was no holding out of the husband by the wife to "the public" as her agent for any purpose,

or to Mr. Woodcock as authorized to execute or make for her, in writing or orally, any deed, power of attorney, or contract of sale or sale, and complainants did not even know who the owners of the property in question were.

We think there is no evidence of a contract of sale between complainants and both defendants.

*Decree reversed, with costs, and bill dismissed.*