**Icillius E. McMURRAY, Appellant,**

**v.**

**RHODE ISLAND, INCORPORATED,
a corporation, Appellee.**

**No. 1688.**

Municipal Court of Appeals for the
District of Columbia.

Argued Sept. 12, 1955.

Decided Oct. 6, 1955.

Rehearing Denied Oct. 31, 1955.

———◆———

Allan Fisher, Washington, D. C., for appellant.

Mark P. Friedlander, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Plaintiff operates an apartment building known as "Rhode Island Plaza." Defendant McMurray was a close friend of one Audrey Washington who rented and occupied one of the plaintiff's apartments. On the basis of such friendship the de-

fendant, on or about June 1952, gave up his then residence and thereafter periodically occupied Audrey Washington's apartment. He notified the Civil Service Commission to mail his monthly annuity checks to that new address.

From August 1952 through March 1954 defendant's checks were delivered as requested where they were deposited in a box provided for tenants' mail at the "desk" of the apartment. Six of these checks, each bearing on their reverse side the purported indorsement of McMurray and the indorsement of Miss Washington, were delivered by her to the plaintiff in partial payment of rent for the apartment.

In April 1954, 21 months after the first check had been sent to this address, the defendant filed a claim with the United States Treasury to recover the proceeds of all of the checks, claiming that they had never been received by him. Plaintiff-landlord was required, by deductions from its bank account, to repay the amount of the six checks to the government. Plaintiff then sued McMurray for that amount. Defendant claimed that the indorsement of his name on the checks had been forged by Audrey Washington.

At the trial the defendant, called by plaintiff as an adverse witness, testified to the above facts. He admitted that the checks were delivered as directed from August 1952 to March 1954, that he knew they were received there, and that he had authorized Audrey Washington to pick them up at the apartment "desk." He also testified that although he knew Audrey Washington was receiving the checks during the time mentioned, it was not until April 1954 that he first complained of their non-receipt. His explanation was that he thought she was holding the checks for him and not until he asked for them did he learn they had been cashed. He admitted that he never at any time gave the plaintiff-landlord any instructions regarding the checks, and that he never complained to

plaintiff about Washington having received the checks. The trial court found that the defendant had authorized Audrey Washington to obtain and cash the checks and use the proceeds. From a judgment for plaintiff, defendant appeals.

We think the ruling of the trial court must be sustained. Defendant plainly admitted that for some 21 months Audrey Washington was, by his authorization and with his continuing knowledge and acquiescence, receiving the checks. It is clear that such conduct created an agency relationship. Baltimore & O. R. Co. v. Jones & Laughlin Steel Co., 138 Md. 604, 114 A. 730. Nor is it necessary that such acts and conduct of the principal be known to the person seeking to charge the principal. Twilley v. Bromley, 192 Md. 465, 64 A.2d 553.

Appellant argues that the rule of estoppel should not be applied in this case. But the record does not show that the trial judge applied such rule or rested his decision thereon. Nor is it the decisive issue in this court in view of what we have just said concerning the principal and agent relationship between defendant and Audrey Washington.

A third argument is that defendant could not have given Audrey Washington authority to indorse his checks because of a Treasury Department regulation which states in effect that no one other than the payee of an annuity check may indorse and cash it without an express power of attorney in writing. 31 Code Fed.Regs. § 360. The argument may be very simply answered. Whatever construction be given the regulation in a dispute between the government and a payor, we think it cannot control in a suit between an ultimate payor (plaintiff here) and a payee-indorser who through his own conduct has given a third party authority to indorse and cash checks in his name.

Affirmed.